## 12268

### THE STATE v. LEWIS *ET AL.*

#### (139 S. E., 386)

1. CRIMINAL LAW—DENIAL OF CONTINUANCE BECAUSE OF ABSENCE OF WITNESS SUBPOENAED BY STATE HELD NOT ERRONEOUS, DEFENDANTS HAVING NO RIGHT TO ASSUME PRESENCE.—Denial of continuance on account of absence of witness subpoenaed as a witness for the State *held* not erroneous, since defendants had no right to assume because State had subpoenaed him as a witness that he would be there at the trial, and if they wanted him as a witness he should have been summoned by proper process.

2. JURY—PRESENTING JURORS CONVICTING ONE OF JOINT DEFENDANTS FOR PERJURY AT SAME TERM HELD ERRONEOUS, THOUGH ADDITIONAL CHALLENGES WERE SUBSEQUENTLY GIVEN AND REMAINING JURORS EXCLUDED.—Where one of defendants in prosecution for receiving deposits knowing bank to be insolvent had been tried at same term and convicted of perjury, placing names of jurors returning such verdict in jury box *held* erroneous, though attempt was made to correct such situation by giving defendants additional challenges, for those used in objecting to jurors drawn and excluding remaining jurors, who had been on previous case.

3. BANKS AND BANKING—ACTUAL RECEIPT IS ESSENTIAL ELEMENT OF OFFENSE OF RECEIVING DEPOSITS KNOWING BANK TO BE INSOLVENT (CR. CODE 1922, § 241).—In prosecution under Cr. Code 1922, § 241, against bank officers for receiving deposits knowing bank to be insolvent, defendants *held* entitled to directed verdict in absence of evidence establishing actual receipt of such deposits as distinguished from constructive receipt by merely assenting to or having knowledge of actual receipt by some other person.

4. STATUTES—PENAL STATUTE MUST BE STRICTLY CONSTRUED.—A penal statute is subject to the rule of strict construction.

5. STATUTES—ANY DOUBT AS TO PROPER CONSTRUCTION OF PENAL STATUTE MUST BE RESOLVED IN FAVOR OF CITIZEN.—If there be any doubt as to the proper construction of a penal statute, it must be resolved in favor of the citizen as against the State.

6. STATUTES—SPECIAL PROVISION ON SAME SUBJECT EMBRACED IN GENERAL PROVISION IS HELD TO BE EXCEPTION AND NOT EMBRACED IN GENERAL PROVISION.—Where special provision in legislative enactment is made as to subject which would otherwise be embraced

---

NOTE: As to whether the actual personal receipt of a deposit by an officer or employee of an insolvent bank essential to his conviction, see annotation in 26 L. R. A. (N. S.), 1072; 3 R. C. L., 497.

Penal statute subject to rule of strict construction, see 25 R. C. L., 1081; 4 R. C. L. Supp., 1620; 5 R. C. L. Supp., 1365.

in general provision on same subject, the special provision is held
to be an exception, and not embraced in general provision.

7. CORPORATIONS—CORPORATE OFFICERS ARE NOT AGENTS OF EACH
   OTHER.—Officers of a corporation are not agents of each other.

Before S. T. LANHAM, Special Judge, Horry, June, 1926.
Reversed.

H. A. Lewis and another were convicted of receiving
deposits knowing a bank to be insolvent, and they appeal.

*Messrs. Lide & McCandlish, Sherwood & McMillan,* and
*A. F. Woods,* for appellant H. A. Lewis, cite: *Absence of
material witness prevented fair trial:* 104 S. C., 353. *Error
in case at bar in method of drawing jury:* Art. 1, Sec. 18,
Const.; 16 S. C., 460; 20 S. C., 450; 25 S. C., 121; 31 S.
C., 238; 34 S. C., 49; 48 S. C., 8; 43 S. C., 91; 54 S. C.,
152; 65 S. C., 242; 120 S. C., 536; 125 S. C., 281. *Courts
zealous in insuring fair and impartial trial:* 91 S. C., 29;
104 S. C., 357; 117 S. C., 76; 120 S. C., 214; 129 S. C.,
200; 107 S. C., 448; 128 S. C., 447; 131 S. C., 422; 128
S. C., 411; 15 Fed. (2nd.), 690; 133 S. C., 491. *Construc-
tion of Sec. 241, Cr. Code:* 25 R. C. L., 1081-1094; 22
S. C., 301; 2 Bail., 335; 67 S. C., 312; 71 S. C., 208; 96
S. C., 5; 90 S. C., 412; 99 S. C., 218; 113 S. C., 99; 36
Cyc., 1186; 128 S. C., 14; 44 Sup. Ct., 69; 68 L. Ed., 48;
138 S. C., 374; 137 S. E., 211; 75 Fed., 781; 92 S. C.,
393; 129 S. C., 480; 12 N. W., 12; 51 So., 4; 61 Pac., 612;
16 So., 150; 33 S. W., 41, 44. *Officers of a corporation
are not agents of each other:* 135 S. C., 123; 113 S. C., 522;
101 S. C., 277; 118 S. C., 327. *When a principal in the
commission of an unlawful act:* 107 S. C., 139; 88 S. C.,
204. *Review of statutes and decisions of other states:* 100
Pac., 135; 135 A. S. R., 651; 16 So., 150; 180 S. W., 512;
256 S. W., 357; 265 S. W., 76; 61 Pac., 612; 119 Pac., 30;
45 N. E., 991; 124 N. E., 537; 127 N. E., 364; 132 N. E.,
822; 44 N. W., 700; 66 N. W., 737; 71 N. W., 248; 85
N. W., 795; 245 Pac., 128; 55 Pac., 342; 126 Pac., 655;
270 S. W., 816; 123 S. W., 339; 62 So., 145; 45 So., 951;
72 N. W., 797; 83 N. W., 190; 51 So., 4; 33 S. W., 41;

35 S. W., 615; 54 S. W., 226; 279 S. W., 76; 161 S. E., 616; 61 Pac., 612; 243 Pac., 251; 252 Pac., 455; 162 S. W., 339; 118 Pac., 9; 70 N. W., 312; 119 N. W., 1110; ·131 A. S. R., 1022; 3 R. C. L., 497, Sec. 124; Sec. 3403, Ala. Code, 1923; Ser. 547, Penal Code, Ariz. Rev. St., 1913; Sec. 697, Ark. Dig. St., 1921; Sec. 562, Cal. Penal Code, 1923; Sec. 2676, Colo. Comp. St., 1921; Sec. 205, Ga. Code, 1914; Sec. 5291, Idaho Comp. St., 1919; Sec. 38, Ill. Cr. Code Rev. St., 1921; Sec. 2031, Ind. Rev. St., 1894; Sec. 9279, Ia. Code, 1924; Sec. 9119, Kans. Rev. St., 1923; Chap. 266, Sec. 54 Genl. L., Mass., 1921; Sec. 8919, Genl. St. Minn., 1913; Sec. 1169, Miss. Code, 1906; Sec. 11763, Rev. St. Mo., 1919; Sec. 11443, Rev. Code Mont., 1921; Sec. 309, Rev. St. Mo., 1913; Sec. 634, Rev. L. Nev., 1912; Sec. 405, N. M. St., 1915; Sec. 85, Chap. 4, Pub. L. N. C., 1921; Sec. 9283, Rev. Code N. D., 1905; Sec. 4128, Okla. Comp. St., 1921; Sec. 6221, Ore. L., 1920; Sec. 8998, S. D. Rev. Code, 1919; Chap. 44, Acts 1911, Tenn.; Art. 557, Rev. Cr. St. Tex., 1925; Sec. 8369, Utah L., 1917; Sec. 4132, Va. Code, 1919; Sec. 8897, Vol. 2, Pierce's Wash. Code, 1919; Sec. 4541. Wis. St., 1923; Sec. 7138, Wy. Comp. St., 1920.

*Messrs. Phillip H. Arrowsmith* and *Frank A. Thompson,* for appellant S. P. Bolyn, cite: *The word "feloniously" essential to all indictments for a felony:* 1 S. W., 594; 51 Mo., 26; 52 Pac., 264; Breese (Ill.), 256; 1 Chit. Cr. L., 242; Moore Cr. L., 790; 1 Bish. Cr. L., 693; 1 Whart. Cr. L., 1283; Bish. Cr. Pr., 534; 54 N. E., 981. *"Feloniously":* 17 Ind., 307; 59 Pac., 761; 66 S. W., 645; 75 S. W., 471; 7 Blackf., 186; 4 N. W., 551; 55 S. W., 282; 5 S. W., 257, 260; 44 S. W., 235; 22 S. W., 447, 450; 23 S. W., 263, 267; 61 S. W., 187; 70 S. W., 478; 71 S. W., 1000; 75 S. W., 457, 459.

*Messrs. J. M. Daniel, Attorney General, Cordie Page, Assistant Attorney General, W. F. Stackhouse* and *Frank A. Miller,* for respondent, cite: *Non-compliance with Cir-*

*cuit Court Rule 27 furnishes no just ground for continuance:* 66 S. C., 449; 107 S. C., 411; 78 S. C., 264. *Construction of Sec. 241 Cr. Code:* 3 R. C. L., 497; 51 So., 4; 26 L. R. A. (N. S.), 1072; 54 Wis., 376; 79 Ia., 432; Ann. Cas., 1912-B, 309; 7 C. J., 580; 1 Cur. Dig. Ann., 377. *"Insolvency":* Ann. Cas., 1916-C, 85; 20 A. L. R., 1203; 3 R. C. L., 490. *Aiders and abettors are principals in the commission of an unlawful act:* 97 S. C., 442; 107 S. C., 446; 51 L. R. A. (N. S.), 718. *Criminal liability:* 7 C. J., 574. *Cases distinguished:* 15 Fed. (2nd.), 690.

September 15, 1927.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

Appellants' statement is:

"The indictment against the defendants H. A. Lewis and S. P. Bolyn grew out of the failure of the Planters' Bank, a banking corporation at Marion, S. C. This bank carried on business through November 22, 1924, and did not reopen its doors for business on Monday morning, November 24, 1924. When the bank closed, the defendant H. A. Lewis was its vice president, a director, and a member of the loan committee. The only salary that he received was $25 a month, the same as the other two members of the loan committee received. The defendant S. P. Bolyn was its cashier and a director. A joint indictment was given out to the grand jury of Marion County at the 1925 June term, charging the defendants with five offenses, as follows: First count, fraudulent breach of trust of the moneys, funds, books, reports, statements and assets of said bank of the value of $103,022.37; second count, receiving deposits knowing the bank to be insolvent; third count, unlawful payment of dividends in December, 1923; fourth count, unlawful payment of dividends in July, 1924; and fifth count, making fraudulent misrepresentations as to the property and resources of said bank with respect to the indebtedness of J. T. and A. D. Owens to said bank.

"The grand jury of Marion County found a true bill, and subsequent thereto both of the defendants moved for a change of venue on the ground that they could not obtain a fair and impartial trial in Marion County. The showing made was so overwhelming that it was not resisted, and the Circuit Judge granted the motion and ordered the cause to be tried in Horry County. The case was called for trial at the 1926 June term of the Court of General Sessions for Horry County. Immediately preceding the call of this case, the defendant S. P. Bolyn was tried at the same term of Court before a jury from the same panel for perjury and for making a false statement with respect to the property and resources of the Planters' Bank, and the jury returned a verdict of guilty. The Court over the objection of the defendants placed the names of the 12 jurors in the jury box, and 9 of them were presented to the defendants before the Court made an attempt to correct the situation. This was done by giving the defendants additional challenges for those they had used in objecting to any of the 9 jurors who had been drawn on the Bolyn case, and by taking out of the panel the three remaining jurors who had been on the Bolyn case.

"Before arraignment both of the defendants moved to quash and demurred to counts 1, 3, 4, and 5 of the indictment, and moved to strike out as surplusage from the second count of the indictment 'and deposits from divers and sundry other persons too numerous to mention.' The motions were refused except as to striking out as surplusage from the second count of the indictment 'and deposits from divers and sundry other persons too numerous to mention,' which motion was allowed.

"The defendants also moved for a continuance when they learned that Frank H. Daniel, the assistant state bank examiner, was not present as a witness, as he was the officer who had conferences with the officers and directors of the bank before and after it closed. His name was on the

original indictment and he had been subpœnaed by the State. The defendants did not learn that he would not be present until the day before the trial, and he could not then be summoned by the defendants because he was temporarily in the City of New York.

"At the close of the testimony both defendants moved for a directed verdict as to all five of the counts of the indictment. The Court directed a verdict of not guilty as to both of the defendants on the first count and a verdict of not guilty as to the defendant S. P. Bolyn, on the fifth count. The defendant H. A. Lewis put up no testimony. The jury found the defendant H. A. Lewis not guilty on the third, fourth, and fifth counts of the indictment, and the defendant S. P. Bolyn not guilty as to the third and fourth counts of the indictment, and found both of the defendants guilty on the second count 'without intent to defraud and recommend to the mercy of the Court.' The presiding Judge sentenced each of the defendants to one year imprisonment and a fine of $1,000."

The questions involved as stated by counsel of appellant Lewis are:

"The Planters' Bank of Marion did not open for business on Monday morning, November 24, 1924, and the alleged charges against the defendants grew out of the failure of that institution. Both of the defendants were found guilty on the second count in the indictment 'without intent to defraud and recommend to the mercy of the Court.' This count of the indictment charged the defendants with receiving deposits knowing the bank to be insolvent in violation of Section 241 of Volume 2 of the Criminal Code of South Carolina. The exceptions of the defendant H. A. Lewis present three main points: (1) The Court erred in not granting the motion of the defendants to continue the case when they learned that Frank H. Daniel, assistant state bank examiner, would not be present as a witness; (2) the Court erred in the manner and method of drawing the jury;

and (3) the Court erred in refusing to direct a verdict on the second count in the indictment and in the charge relating thereto."

The questions involved as stated by counsel for appellant Bolyn, are:

"(1) Did the presiding Judge abuse his discretion in ordering the case to trial over objection when it appeared that the responsible state's officer upon whose knowledge and testimony defendant relied to establish his innocence was absent beyond the jurisdiction of the Court because of leave granted by state's counsel after said officer had been subpœnaed by the State and for that reason was not under subpœna by the defendant?

"(2) Did the presiding Judge commit prejudicial error of law in permitting jurors to be called to serve in this case against the defendant S. P. Bolyn who had served on the jury which had just convicted the same defendant of fraudulently misrepresenting the condition of the bank as to overdrafts and of willful perjury in connection therewith over objection of defendant's counsel, which necessitated examining these jurors on their *voir dire* in open Court in the presence of the other jurors and to ask them whether or not they would believe what the defendant said in his defense upon oath and to hear them answer in the negative?

"(3) Did the presiding Judge sufficiently correct this error and remove this prejudice by admitting the error and granting additional challenges to the defendant for those exhausted against such jurors who had served in the previous case?

"(4.) Did the presiding Judge err in admitting in evidence deposit slips made and received by John O. Lewis and R. N. Johnson, assistant cashiers of the bank, as evidence of receipt of deposits by the defendant Bolyn, without requiring the State to call said assistant cashiers to the stand as witnesses to confront the defendant and to be subjected to cross examination?

"(5) Did the presiding Judge err in permitting the State's witness, La Roque, to testify as to an admission made by the defendant after the bank closed as to the loss sustained by the bank at that time as evidence of insolvency before it closed and in letting the same witness testify to his inability to collect certain mentioned papers of the bank as further evidence of insolvency of the bank before it closed, and in admitting previous bank statements to show that such papers had been carried in the bank for some time before its closing, and thereby impute knowledge to the defendant Bolyn?

"(6) Did the presiding Judge err in excluding the testimony of Dr. Z. G. Smith to the effect that on Friday night the defendant Bolyn turned over the bank to Daniels, state bank examiner, and had kept it open on Saturday following on which day the deposits were received under his direction because such action was not as the result of a meeting of a majority of the board of directors when the statute under which he was indicted made the offense a felony, when the indictment charged it as having been done feloniously and when such testimony tended to negative the felonious intent?

"(7) Did the presiding Judge err in refusing to direct a verdict for the defendant Bolyn on the second count of the indictment because there was no evidence to show that the bank was insolvent on the day that the deposits were received, and if there was there is no evidence to show that the defendant Bolyn knew it, and, if there was, there is no evidence to show and on the contrary the evidence affirmatively discloses that he did not receive any deposits on that day?

"(8) Did the presiding Judge err in charging the jury that the receipt of deposits by assistant cashiers of a bank elected by the board of directors, if done with the knowledge of the cashier, when the bank was insolvent, to his knowledge, would render him criminally liable?"

The exceptions alleging error in not continuing the case on account of the absence of the witness Daniel are overruled, as the defendant did not subpœna Daniel as a witness. They had no right to assume because the State had him as a witness he would be there at the trial. If they wanted him as a witness they should have summoned him by proper process.

The second question as to the manner of drawing the jury should be sustained. The defendant did not get a fair trial. The examination of the jurors was highly prejudicial to them and poisoned the whole air of the courtroom. The honest effort of the Judge to correct his mistake did not repair the damage done the defendants. Every citizen is entitled to a fair and impartial trial; we refer to the following cases: *State v. Weldon,* 91 S. C., 29; 74 S. E., 43; 39 L. R. A. (N. S.), 667, Ann. Cas., 1913-E, 801; *State v. Bethune,* 104 S. C., 357; 89 S. E., 153; *State v. Gossett,* 117 S. C., 76; 108 S. E., 290; 16 A. L. R., 1299; *State v. Harrison,* 120 S. C:, 214; 112 S. E., 926; *State v. Griffin,* 129 S. C., 200; 124 S. E., 81; 35 A. L. R., 1227.

The case of *State v. Gens,* 107 S. C., 448; 93 S. E., 139, L. R. A., 1918-E, 957, we think is enlightening on the subject under discussion. There the bystanders in the courtroom during the trial of the case by their actions and general conduct were hostile to the defendants. The Court through Mr. Justice Watts used the following language: "The action of the women was highly improper, in that it was an attempt to impede justice, however innocent on their part, and deny to the defendant a fair and impartial trial, guaranteed to him by the law of the land, an attempt to influence a sworn jury to arrive at a verdict improperly, and to be influenced by outside influence, trying the case by manufactured outside public opinion, and not by the facts of the case as developed in evidence and the law of the trial Judge" —and without hesitation gave the defendant a new trial on

the ground that he had not received a fair and impartial trial.

The protection given to every defendant could not be more emphasized than by the decisions in the case of *State v. Harvey,* 128 S. C., 447; 123 S. E., 201, and the case of *State v. Simms,* 131 S. C., 422; 127 S. E., 840. It is true that in these two cases it related only to the imposition of a sentence after the Judge had received information in a private way and not in the presence of the defendants. In the *Harvey case* Judge Bowman presided. In the *Simms case* Judge Dennis presided, and no one would assume that either of these gentlemen would be influenced in imposing a sentence by information that they received privately, but our Court, being conscious of how easy it is to sway people and how human it is to be influenced, no matter how fair-minded a person may be, sent the cases back for the defendants to be resentenced. In other words, the Court had serious doubt as to whether the defendants had received a fair and impartial sentence. And these were cases where men far above the average, occupying judicial positions, supposed to hear all things with a fair and impartial mind, yet rather than have one of its citizens' rights infringed in any manner, they did not overlook as a matter of law such a procedure even by men whose character and integrity will never be questioned.

The case of *State v. Barker et al.,* 128 S. C., 372; 122 S. E., 494, is a most striking case of the protection given to citizens on trial to see that they receive a fair and impartial trial. In that case the Circuit Judge criticized petit jurors to a grand jury in the presence of a petit jury for not convicting in murder cases. The Court speaking through Mr. Justice Watts held that such a statement was practically a charge to the petit jury and was bound to influence them.

One of the strongest cases is that of *State v. Ashley,* 128 S. C., 411; 123 S. E., 260. In that case the defendant was on trial for the violation of the prohibition law. During

the progress of the trial the solicitor read the caption of a similar indictment against the same defendant and swore witnesses for the grand jury in the presence of the petit jury. Mr. Justice Marion as the organ of the Court said that such conduct was likely to prejudice the minds of the trial jury and might well turn the scale against him in a close case. The case was reversed because the Court was convinced that the defendant did not receive a fair and impartial trial.

As to the refusal to direct a verdict on the second count of the indictment and his charge thereto, the second count is based on Section 241 Criminal Code, which is:

*"Felony for Officers of Bank to Receive Deposits After Knowledege of Insolvency.*—It shall be felony for any president, director, manager, or cashier, or any other officer of any banking institution, to receive any deposits or trusts, or to create any debts for such corporation, after he shall become aware that such corporation is insolvent; and every officer of such failing corporation shall become personally liable to the amount of such deposits or trusts received by him, or with his knowledge or assent, in any such case, to the person thereby damaged, whether criminal prosecution be made or not. And all persons convicted for felony, as herein provided, shall be punished by imprisonment for a term of not less than one year, and by a fine not less than one thousand dollars."

This Section imposes criminal liability for the receipt of deposits by a bank officer, and also civil liability upon bank officers for actually receiving deposits, or for the reception thereof with their knowledge or assent. The contention of the defendant is that the criminal liability is only imposed upon the actual receipt of a deposit, while the civil liability is imposed both for actual receipt and receipt with knowledge or assent of the officer. From the language of the statute defendant insists that the word "received" is used in its common acceptation, meaning actual

as distinguished from constructive receipt, and that the plain meaning of the statute from its language can only be that any officer who actually receives a deposit shall be both criminally and civilly liable; but if he merely assents to, or has knowledge of, the actual receipt by some other person he shall be only civilly liable therefor. If the word "received" includes a constructive receipt, such as merely having knowledge of or assenting to the manual receipt by another, then in the creation of the civil liability the use of the words "or with his knowledge or assent" could mean nothing. It would seem that defendant's construction of the statute is the only one conforming in all respects to the general rules of statutory construction. This is a penal statute, and must be strictly construed. The fact that an officer of the bank, who knows of, or assents to, the receipt of deposits by some other officer or person, though not actually receiving it himself, may be equally culpable, and equally within the mischief sought to be remedied, will not warrant the Court in extending the statute beyond its plain terms, and it can scarcely be contended that the word "receive" may also include assenting to, having knowledge of, conniving at, procuring or being accessory to the receipt of deposits by some other person, although such acts may be equally as detrimental as the actual receipt of the deposit. These views are well supported by authority.

"It has long been the well settled general rule that penal statutes are subject to the rule of strict construction. They will not be construed to include anything beyond their letters even though within their spirit, and nothing can be added to them by inference or intendment. More correctly it may be said that such laws are to be expounded strictly against an offender and liberally in his favor. This can be accomplished only by giving to them a literal construction so far as they operate penally, or at most, by deducing the intention of the Legislature from the words of the act. In extension of the letter of the law nothing may be assumed by implication,

nor may the mischief intended to be prevented or redressed, as against the offender be regarded in its construction. Criminal statutes which specifically enumerate acts, or places in which they shall be committed, and make them punishable as offenses, cannot be made to embrace other acts or places merely because they may be said to be within the reason and policy of the law, for the reason that they are of equal atrocity and kindred character." 25 R. C. L., 1081, 1084.

"The object of construction is to reach the intent of the matter under consideration whether it be an act of the general assembly, a deed, contract, or other paper, and the same rules apply, except, as we are admonished, in criminal laws the rules must be strictly applied and the law strictly construed. In such laws there is no room for an enlarged or liberal interpretation under the influences of what is termed the spirit or intendment of the law as in civil matters; on the contrary, the letter must govern." *State v. Cofield,* 22 S. C., 301.

"Penal statutes are to be strictly construed. 'The rule that penal statutes, as contradistinguished from remedial statutes, must be construed strictly, is but a means of arriving at the intention. When a law imposes a punishment which acts upon the offender alone, and not as a reparation to the party injured, and when it is entirely within the discretion of the law-giver, it will not be presumed that he intended it should be extended further than is expressed; and humanity would require that it should be so limited in the construction as to be certain not to exceed the intention.' *State v. Stephenson,* 2 *Bailey,* 335; *Kaufman v. Carter,* 67 S. C., 312; 45 S. E., 211." *Sturkie v. Southern Railway,* 71 S. C., 208; 50 S. E., 782.

A fair example of the principle involved will be found in the case of *City of Anderson v. Fant,* 96 S. C., 5; 79 S. E., 641. In that case the defendant was convicted by the City of Anderson for transporting contraband liquors. The defendant purchased for certain other parties two pints of

contraband whisky, and carried the whisky to them. The Circuit Court held that, having obtained the liquor through an unlawful sale, it was contraband, and the subsequent transportation of it was a violation of the law. The conviction, however, on appeal to the Supreme Court, was reversed on the ground that, although it might be equally culpable to purchase contraband whisky as to sell it, yet, since the purchase had not been made a crime, but only the sale, it was not within the contemplation of the law to punish the transportation by the buyer of the contraband liquor illegally sold. A portion of the reasoning of the Court is as follows:

"It will be observed that neither the State Statute nor the city ordinance penalizes the purchase of liquors. It has never been the policy of this State to punish the buyer of liquors. There is, therefore, no inhibition in the statutes or ordinances against buying, except as it is the counterpart of selling, which is prohibited; but, as between the two, the seller alone is subjected to punishment. It may be that, from a moral standpoint, the buyer is equally culpable with the seller, and, doubtless there are circumstances under which, viewed from that standpoint, he is the more worthy of blame. But the Courts must accept, as the policy of the State, that which is written in the statutes. The reasons why the lawmakers have not seen fit to condemn the buyer as well as the seller are not material, because that is a matter for legislative rather than judicial consideration. * * *

"In the light of the established policy of the State, and of the universally recognized principle that penal statutes must be strictly construed, we cannot, without doing violence to both, sustain defendant's conviction. We cannot do so, without reading into the statute and ordinances that which the lawmakers have purposely refrained from writing into them. They do not condemn the buyer. We must assume that the lawmakers understood the use of the word 'buy' quite as well as the word 'sell,' and that, if they had in-

tended to condemn the buyer, they would have done so in language as plain as that used against the seller. We have no authority to extend the statute or ordinances by construction to include the buyer."

The Court cannot explore the reasons prompting the Legislature in passing the enactment, and insert provisions by construction, which it might appear that the Legislature did not intend to omit. In the case of *State v. Blease,* 90 S. C., 412; 73 S. E., 769, it is said:

"The Court cannot give such a meaning to the Statute on the ground that there was no reason for the General Assembly to make preparatory students ineligible to scholarships, and that, therefore, their exclusion could not have been intended. When the terms of a Statute are perfectly plain, it is not for the Court to find reasons for its enactment, or for a failure to make its language less general."

The same principle is also stated in the case of *State Co. v. Jones,* 99 S. C., 218; 82 S. E., 1048:

"One of the most elementary rules for the interpretation of statutes is that the intention of the Legislature must be gathered from a liberal interpretation of the language of the Statute where it is plain and unambiguous. Such is the language here used. The words, 'passed by the General Assembly,' have a plain and unmistakable meaning. They cannot be interpreted to mean 'approved by the board of claims,' or 'approved by the ways and means committee,' or 'approved by the House of Representatives,' without doing violence to their ordinary meaning, and the cardinal rules of construction. When the meaning of words is so plain and obvious, the Courts cannot speculate on the intention. To do so would be an assumption of legislative power. * * * In *State ex rel. Atty. Gen. v. Hagood,* 13 S. C., 46, it is said: 'It cannot be claimed that the Court can restate the language of an Act to make it agree with some possible conclusion as to its intention, as affecting the subject-matter of the Act. The language declaring the intent of an Act is

as much beyond our power as the subject to which that declaration relates, and it would violate the principles of law to change the phraseology of a Statute to make it conform to the assumed purpose of the lawgiver in any other way than as warranted by the rules of construction.'  Mr. Cooley, in his Constitutional Limitations, p. 71, says: 'That which the words declare is the meaning of the instrument, and neither Courts nor Legislatures have a right to add to or take away from the meaning.'"

In the case of *Banks v. Electric Co.,* 113 S. C., 99; 101 S. E., 285, it is said:

"If we give the Statute a strict construction, as we are bound to do, under the authorities above cited, the words 'and necessary expenses' must be restricted to mean the expenses of each of the commissioners; and there is no provision of the Statute by which the payment of any other expenses can be imposed upon the defendant.  If the Legislature intended to provide for the payment of any other expenses, all that we can say is that it has not expressed any such intention, and the Court has no power to add to the intention which it has expressed by interpolating words into the Statute, especially as it is susceptible of a very reasonable construction as it now reads."

The principle of statutory construction is also well established as a corollary to the rule of strict construction, that if there be any doubt as to the proper construction it must be resolved in favor of the citizen as against the State.  In discussing the construction of criminal statutes the rule is thus stated in 36 Cyc., 1186:

"But if the acts alleged do not come clearly within the prohibition of the Statute, its scope will not be extended to include other offenses than those which are clearly described and provided for; and if there is a fair doubt as to whether the Act charged is embraced in the prohibition that doubt is to be resolved in favor of the defendant."

This rule has also been consistently applied several times in South Carolina, even in tax cases, not involving the liberty of the citizen but only his property. In the case of *Fuller v. Tax Commission,* 128 S. C., 14; 121 S. E., 478, the rule is stated as follows:

"Where the language relied upon to bring the particular person or subject within the law is ambiguous or is reasonably susceptible of an interpretation that would exclude the person or subject sought to be taxed, the well established general rule requires that any substantial doubt should be resolved against the government and in favor of the taxpayer. *United States v. Merriam* [263 U. S., 179], 44 S. Ct., 69; 68 L. Ed., 48 [240], [29 A. L. A., 1547]."

To the same effect see *Smith v. Highway Commission,* 138 S. C., 374; 136 S. E., 487; *Columbia Gaslight Co. v. Mobley,* 139 S. C., 107; 137 S. E., 211.

By way of further illustration as throwing an interesting sidelight on the question, attention might likewise be called to the decision of the late Judge Brawley in the United States District Court of South Carolina in the case of *Wheeler v. Aiken County Bank* (C. C.), 75 F., 781, in which the construction of a section of the South Carolina banking law was under consideration. The question arose in a civil suit against the directors of the bank for mismanagement, and had particular reference to a Statute of South Carolina forbidding any director or other officer borrowing money from the bank. It was contended that since the Statute made it a criminal offense for the director to borrow, it followed that a civil liability was thereby necessarily imposed upon the directors who assented to the loan. This contention, however, was disposed of as follows:

"It remains to consider whether such liability arises under the Statutes of South Carolina. Section 1540 of the Revised Statutes is as follows: 'No director or other officer of such bank shall borrow any money from said bank, and if any other officer or director shall be convicted upon in-

dictment of directly or indirectly violating this Section he shall be punished by fine or imprisonment or both at the discretion of the Court.' It will be seen that there is not any imperative prohibition against making the loans, nor is any penalty denounced against the officers who lend the money, nor is the repayment of the loan a mitigation of the offense. It is a penal statute, whose effective force is directed against the party borrowing, and affects him alone. The violation of the Statute might subject the corporation to a forfeiture of its franchises. That is a question which we do not have to consider. It does not, in terms, impose any civil liability in damages. As it creates an offense which did not exist at common law, no reason has been suggested why it should not be construed strictly, as such statutes usually are. Newly created liabilities cannot be extended beyond the express provision of the Statute, and where penalties * * * are provided the mode of procedure follows the Statute. * * * We cannot, by construction, supply the deficiency, and impose a penalty which the law does not impose."

In construing the Statute involved in this case, resort may properly he had to another well recognized rule of statutory construction, applying in South Carolina even in civil cases, and of course much more strictly in criminal cases. It will be observed that special treatment is given the subject of assenting to, or having knowledge of, the receipt of deposits, and since this subject has been specially treated, and a civil liability imposed, it would seem to follow that even if the previously used word "receive" may ordinarily be held to include assenting to, or having knowledge of, the receipt of a deposit by another, yet when later in the same section special treatment is given this subject, under the well recognized rule of statutory construction in South Carolina, it must be held to be an exception to the general language, previously used and not included therein.

This rule is stated by the Court in the case of *State v. Bowden,* 92 S. C., 393; 75 S. E., 866, as follows:

"Where, in a legislative enactment, a special provision is made as to a subject which would otherwise be embraced in a general provision on the same subject the special provision is held to be an exception, and not intended to be embraced in the general provision. Enlich on Statutes, § 399; 36 Cyc., 1151."

The rule is again applied in the recent case of *Smith v. Highway Commission,* 138 S. C., 374; 136 S. E., 487, where it is stated as follows:

" 'A Statute which deals with the common subject-matter in a minute and particular way will prevail over one of a more general nature; and of two inconsistent statutes enacted at the same session, that will prevail which takes effect at the later date.

" 'Where there is one Statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general Statute. Where the special Statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.' * * * The 'general highway Act' deals with the subject of licensing motor vehicles 'in general and comprehensive terms.' The 'bus regulation Act' deals only with a part of that same subject 'in a more minute and definite way.' This being the case, it follows under the rule, as laid down in Cyc., that, the terms of the 'bus regulation Act' being special, they must prevail over the provisions of the 'general

highway Act, where there is an inconsistency in the two acts."

Officers of the corporation are not the agents of each other.

Under the law and facts of this case his Honor should have directed a verdict of not guilty as asked for by the defendants, and it is unnecessary to discuss the other exceptions.

Reversed.

MESSRS. JUSTICES COTHRAN and CARTER concur.

MESSRS. JUSTICES BLEASE and STABLER concur in part and dissent in part.

MR. JUSTICE STABLER (concurring and dissenting) : I agree with the conclusion reached by the Chief Justice that the trial Judge committed error in his method and manner of drawing the jury, and that, for this reason, the judgment below should be reversed and a new trial granted; but I dissent from his construction of the Statute (Section 241 of the Criminal Code of 1922) upon which the second count of the indictment is grounded. To give the Statute the construction given it in the leading opinion, is to destroy its force and potency and to impute to the Legislature the doing of a useless and futile thing. As said by the Supreme Court of Mississippi, in construing a Statute similar to ours :

"If this be the true construction of this Statute, it might as well be repealed; for it is obvious that, under such construction, about all that the officers of such an insolvent bank need do is to place some one at the window of the insolvent bank to receive deposits who is thoroughly ignorant, and who is kept in ignorance, of the condition of the bank. If such person should receive a deposit, being so ignorant, he can truthfully say he knew nothing of the condition of the bank, and claim an acquittal. If any officer of the bank is indicted, he can escape under such construction by saying that he did not actually receive the deposit." *State v. Mit-*

*chell,* 96 Miss., 259; 51 So., 4; 26 L. R. A. (N. S.), 1072, Ann. Cas., 1912-B, 309, and cases cited in footnote.

See, also, 3 R. C. L., 497.

The judgment of this Court should be that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.

MR. JUSTICE BLEASE concurs.