16140

STATE *EX REL.* MOODY v. STEM *ET AL.*

(50 S. E. (2d) 175)

466

*Messrs. Mozingo & Watts,* and *C. R. Parrott,* of Darlington, *for Appellant,*

*Messrs. Dargan, Paulling & James,* and *Samuel Want, James S. Verner, Sam Rogol,* and *Leroy M. Want,* all of Darlington, *for Respondents,*

November 4, 1948.

FISHBURNE, Justice.

This action was brought by the appellant, D. Coit Moody, on behalf of the State of South Carolina, against the respondents, who operate a tobacco warehouse in the city of Darlington, to recover certain fixed penalties imposed upon such warehousemen by Code Section 7203 for charging excessive fees in the handling and sale of leaf tobacco. Section 7197 prescribes the maximum rates which may be charged by warehousemen for this service. In separate paragraphs of the complaint, twenty alleged violations of Section 7197 are set forth. For each of these violations a penalty of $500.00 is claimed, aggregating ten thousand dollars.

The respondents interposed a demurrer which raised the issue as to whether or not Section 7203 applies to a violation of the provisions of Code Section 7197. The lower court sustained the demurrer, and this appeal was taken.

Section 7197 of the Code provides in part as follows:

"The charges and expenses of handling and selling leaf tobacco upon the floor of tobacco warehouses in this State shall not exceed the following schedule of prices, to-wit: for auction fees * * * twenty-five (25) cents on all piles over one hundred (100) pounds. * * * The proprietor of each and every warehouse shall render to each seller of tobacco at his warehouse a bill, plainly stating the amount charged for weighing and handling, the amounts charged for auction fees and the commission charged on such sale; and it shall be unlawful for any other charges or fees exceeding those herein named to be made or accepted."

The violations charged in the complaint are alleged to consist of a charge of fifty cents made and collected by respondents as auction fees for the sale of various piles of leaf tobacco exceeding two hundred pounds in weight, whereas under the provisions of Section 7197, the maximum auction fee allowable is twenty-five cents per pile of one hundred pounds or more.

The penalty statute (Section 7203) which appellant contends is applicable reads as follows:

"Any person willfully violating the provisions of section 7197 to 7202, regulating the statistics of leaf tobacco sold, shall be guilty of a misdemeanor and punished within the discretion of the court, and, in addition thereto, shall be subject to a penalty of five hundred dollars, to be sued for in the county in which the offender resides or does business; in case he resides without the State, by the attorney general, whenever he may be advised by the commissioner of agriculture that persons required by law to make reports to him have failed to do so."

For any violation of the foregoing sections, the act is not only made a misdemeanor for which an indictment will lie, but for the same act a penalty of $500.00 is prescribed, and this penalty is cumulative for each and every violation.

The principle is well established that penal statutes are strictly construed, and one who seeks to recover a penalty for failure on the part of the defendant to discharge some duty imposed by law, must bring his case clearly within the language and meaning of the statute awarding the penalty. Such laws are to be expounded strictly against the offender and liberally in his favor. *State v. Lewis*, 141 S. C. 207, 139 S. E. 386, 23 Am. Jur., Sec. 37, Page 631. And it is immaterial, for the purpose of the application of the rule of strict construction, whether the proceedings for the enforcement of the penal law, be criminal or civil. Any doubt as to the proper construction should be resolved in favor of the citizen against the state. *Darlington Theatres v. Coker*, 190 S. C. 282, 2 S. E. (2d) 782.

With these rules of construction in mind, we turn to the penalty statute (Section 7203). Its first sentence reads: "Any person willfully violating the provisions of sections 7197 to 7202, *regulating the statistics of leaf tobacco sold,* * * *" (emphasis added) shall be subject to a penalty.

As pointed out in the order of the lower court sustaining the demurrer, this section does not provide that any person violating *any* of the provisions of Section 7197 shall be liable to a penalty. Its application is limited and confined to the statistics of sales.

The section alleged to have been violated (7197) does not deal with statistics. Provision for this is made in the following sections, to which the penalty provided for under Section 7203 applies.

Section 7198 is entitled, "Warehousemen to keep tobacco statistics," and provides for the keeping of an account of the number of pounds of leaf tobacco sold daily. Section 7199 requires a monthly statement under oath from tobacco warehousemen to the Commissioner of A g r i c u l t u r e, arranged and classified so as to show the number of pounds of tobacco, the grades and price sold first-hand.; the number of pounds, grade and price sold for dealers, etc.; and also requires a cash deposit or bond conditioned upon the making of such reports. Section 7200 requires the Commissioner of Agriculture to consolidate and publish the above reports. Section 7201 defines the term, "Warehousemen" within the meaning of Sections 7198 to 7202; and the latter section (7202) prescribes the form of the "statement herein required."

The Code section which it is alleged was violated (7197) immediately precedes the group of Code sections dealing with statistics. This section makes no reference to statistics, but on the contrary regulates fees and charges, which are nowhere referred to in the statistical reports required to be made to the Commissioner of Agriculture.

We think it clearly appears here that special significance must be given to the expression in the penal statute (7203) : "regulating the statistics of leaf tobacco sold." As pointed out, the section alleged to have been violated (7197) makes no provision for statistics. Its sub-

ject matter has to do with the regulation of charges, and does not come within the condemnation of the penal statute (7203).

This conclusion, it seems to us, is made irrefutable if we trace the history of the pertinent statutes. The original act which, after several amendments, now appears as Section 7197 of the Code of 1942, was passed in 1899 and may be found as Act No. 63, at Page 91, of Volume XXIII of the Statutes of South Carolina, and as Section 1731 of the Civil Code of 1902. Sections 7198 through 7203 of the 1942 Code were together enacted as Act No. 75 of 1909, and may be found at Page 126 of Volume XXVI of the Statutes of South Carolina. By an obvious inadvertent error of the Codifiers, the Act of 1899 (now Section 7197 of the Code), is enumerated as being within the scope of the penalty provision of the Act of 1909 (now Sections 7198 through 7202 of the Code) relating to statistics and reports. It is significant that the Act of 1909 is entitled "An Act to Regulate the Statistics of Leaf Tobacco Sold upon the Floors of the Leaf Tobacco Warehouses of South Carolina," and that the penalty provision thereof is stated to apply to "any person willfully violating the provisions of this Act." This Act of 1909 has no connection with and makes no reference to the Act (now Section 7197 of the Code) passed 10 years earlier, regulating charges to be made by tobacco warehousemen.

It follows that the judgment of the lower court should be affirmed. ·

Judgment affirmed.

BAKER, C.J., and STUKES, TAYLOR, and OXNER, JJ., concur.