## 17516

STATE of South Carolina, Appellant, v. NATIONAL POSTAL TRANSPORT ASSOCIATION, Respondent

(107 S. E. (2d) 703)

*Messrs. T. C. Callison, Attorney General,* and *Whaley & McCutchen* and *Hoover C. Blanton,* of Columbia, *for appellant,*

*Messrs. Nelson, Mullins & Grier,* of Columbia, *for respondent,*

*Messrs. T. C. Callison, Attorney General,* and *Whaley & McCutchen* and *Hoover C. Blanton,* of Columbia, *for appellant, in reply.*

March 12, 1959.

Legge, Justice.

Action on behalf of the State to hold respondent, a foreign insurance corporation, liable for the penalty of ten dollars per day imposed by Section 12-737 of the 1952 Code. Judge Littlejohn, before whom the case was presented on a stipulation of facts, ordered judgment for the defendant, and the State appeals.

The complaint alleges: that the defendant, a New Hampshire corporation, has for more than two years been engaged in the business of insurance in South Carolina; has not domesticated or qualified to transact business in this state; has failed to file with the Secretary of State the stipulation required by Section 12-721 of the Code, or the papers required by Section 12-724, or the report required by Section 12-731; and has not been licensed by the Insurance Commissioner of this state to transact business therein; and that this action is brought under Section 12-737 for the penalty of ten dollars per day thereby imposed, for a period of two years (the time limited by Section 10-145(2) for commencement of such an action), amounting to $7,300.00, for which judgment is prayed.

In its answer, the defendant alleges: that for more than two years it has been doing business in this state as an insurance company within the meaning of Section 37-2(3); admits that it has not filed with the Secretary of State the documents required by Sections 12-721, 12-724 and 12-731, being exempt, by Section 37-2(3), from such requirement; admits that it has not obtained a license from the Insurance Commissioner, having been advised by him that it is exempt, by Section 37-856, from the requirement of obtaining such license; alleges that it is authorized by the Insurance Commissioner to transact business in this state; and denies that it is subject to the penalty prescribed by Section 12-737.

The stipulated facts are, in substance, as follows:

1. Defendant, a foreign insurance corporation organized under the laws of New Hampshire, is doing business in South Carolina as an "insurance company" or "insurer" within the meaning of Section 37-2(3) of the 1952 Code, and has been so engaged in business in this state for more than two years prior to the commencement of this action. Its counsel stated during argument of the appeal, in response to inquiry by this court, that respondent had been so doing business in this state for some twenty-one years.)

2. Defendant has not filed any stipulation, declaration, statement, report or other papers, or paid any fee provided for in Chapter 11 of Title 12 of the 1952 Code.

3. Defendant is a fraternal benefit association which limits its membership to any regular male postal transportation clerk or male substitute postal transportation clerk of the United States Postal Transportation Service who is of the Caucasian race or a native American Indian, "Postal Transportation Service" being defined in defendant's constitution as "the transportation and handling of mail by any means of transport, land, sea, and air."

4. Defendant has no license or certificate from the Insurance Commissioner of South Carolina authorizing it to do business in this state, and it has not paid to the Insurance Commissioner any of the fees prescribed in Title 37 of the 1952 Code.

The 1952 Code is divided into seventy-two Titles, alphabetically arranged, consecutively numbered, and each captioned to indicate the subject with which it deals. Title 1, for example, is captioned "Administration of the Government"; Title 72, "Workmen's Compensation". The several Titles are divided into Chapters (the longer Chapters being subdivided into Articles), and are further, and finally, divided into Sections. Title 12, captioned "Corporations", is divided into fifteen Chapters, of which Chapter 11, captioned "Foreign Corporations", deals with the domestication of such corporations and is divided into three Articles as follows: Article 1, "General Provisions", comprising Sections

12-701 through 12-708; Article 2, "Qualification and With-drawal", comprising Sections 12-721 through 12-725; and Article 3, "Fees and Annual Reports", comprising Sections 12-731 through 12-738.

Section 12-721 requires that each foreign corporation ap-plying for admission to South Carolina shall file with the Secretary of State a stipulation or declaration designating some place within this state as the principal place of business or location of the corporation in this state, at which process may be served upon it by delivery to any officer, agent or employee of the corporation found therein. Section 12-722 provides that if such corporation transacting business in this state shall not have complied with the requirement of 12-721, it shall be deemed to have designated the Secretary of State as its agent upon whom process may be served in any action against it growing out of the transaction of any business within this state; and, further, that "nothing herein shall apply to insurance companies or associations required to pay fees to the Department of Insurance of this state." Sec-tion 12-724 requires that "in addition to the declaration re-ferred to in § 12-721 each corporation shall file in the office of the Secretary of State, together with the written stipula-tion or declaration aforesaid, copies of its charter and by-laws, with all increases of capital stock, and amendments to them that may from time to time be made within sixty days from the date of making such amendments". Section 12-731 requires each foreign corporation domesticated in this state to file annually in the office of the Secretary of State a state-ment "showing the residence and postoffice address of such corporation within the State, the amount of capital stock of the same actually paid and the names of the president and secretary, if there be any such, and of the members of the board of directors, with their respective places of residence and postoffice addresses." Section 12-732 provides that for-eign corporations doing business in this state shall, in addi-tion to the other requirements contained in the Code, make an annual report to the South Carolina Tax Commission;

but by the provisions of 12-732.1 the making of such report is not required of any insurance company.

Sections 12-733, 12-734 and 12-735 respectively provide that each foreign corporation domesticating in this state shall pay certain fees to the Secretary of State upon filing the documents required by 12-721, 12-724 and 12-731, and upon filing certain other documents relating to increase or decrease of capital stock, change of statutory agent, and withdrawal. Section 12-736 declares that the provisions of 12-733, 12-734 and 12-735 shall not apply to foreign insurance corporations.

Section 12-737 provides that "any foreign corporation failing to file any of the papers required by this chapter to be filed or failing to pay any of the fees required by this chapter to be paid shall be liable to a fine of ten dollars per day for each day it fails to comply with such requirements, to be recovered at suit of the State in the court of common pleas for any county of the State."

In 1947 the General Assembly enacted a comprehensive insurance code, known as the "Insurance Law" (45 Stat. at Large, p. 322-473), which is now incorporated in Title 37 of the 1952 Code of Laws, captioned "Insurance", and divided into fourteen chapters. Chapter 2 establishes, as "a separate and distinct department of the state government", Code 1952, § 37-51, the Department of Insurance, the chief officer of which is the Insurance Commissioner.

Section 37-101 requires that "every insurance company doing business in this State shall be licensed and supervised by the Commissioner."

Section 37-105 requires that every insurance company, before being licensed, shall in writing appoint the Commissioner as its attorney upon whom process in any action or proceeding against it shall be served.

Section 37-107 provides that "before granting a certificate of authority to do business in this State to any foreign insurance company, the Commissioner shall be satisfied by

proper evidence that such applicant for a license is duly qualified to do business under the laws of this State; that it is safe and solvent; that its dealings are fair and equitable; and that it conducts its business in a manner not contrary to the public interests".

Section 37-110 declares that it shall be unlawful for the Secretary of State to issue any charter to an insurance company or to grant any amendments of its charter, or to permit any foreign insurance company to do business within the state without the written approval of the Commissioner.

Sections 37-121, 37-122, 37-124 and 37-128 provide for payment to the Commissioner by insurance companies of certain annual license fees; and Section 37-134 requires that all licenses issued by the Commissioner be so granted as to expire on March 31 of each year.

In addition to the requirement of 37-101 that all insurance companies doing business in South Carolina shall be licensed by the Commissioner, Title 37 requires that annual licenses, expiring March 31, be issued by him, upon payment of prescribed fees therefor, to insurance brokers (37-201), adjusters (37-221), and agents (37-231), all such licenses being revocable by the Commissioner for violation of any of the provisions of Title 37.

The affairs of all insurance companies doing business in this state are subject to examination by the Commissioner or his deputy (37-281); and all such companies are required to file with the Commissioner annual statements of their condition (37-293).

Chapter 9 of Title 37 is captioned "Fraternal Benefit Associations". It is divided into seven Articles, and contains a total of seventy-six Sections. From the stipulation in the cause before us, we assume that the respondent is a fraternal benefit association as defined in that chapter. The following sections are of interest here:

"§ 37-856. Nothing contained in this chapter shall be construed to affect or apply to associations which limit their

membership to any one hazardous occupation, nor to similar societies which do not issue insurance certificates * * * nor to domestic lodges, orders or associations of a purely religious, charitable and benevolent description which do not provide for a death benefit of more than one hundred dollars or for disability benefits of more than one hundred and fifty dollars to any one person in any one year. The Commissioner may require from any such association such information as will enable him to determine whether such society is exempt from the provisions of this chapter."

"§ 37-857. Fraternal benefit associations as defined in this chapter shall be governed by the provisions hereof and the general insurance laws of this State shall not apply to such associations unless express provision therefor is made in any such law."

§ 37-891. No foreign fraternal benefit association shall transact any business in this State without a license from the Commissioner. On seeking admission to do business in this State such association shall file with the Commissioner:

(1) A duly certified copy of its charter or articles of incorporation;

(2) A copy of its constitution and laws certified by its secretary or corresponding officer;

(3) A power of attorney to the Commissioner as hereinafter provided.;

(4) A statement under oath by its president and secretary or corresponding officers in the form herein prescribed of its business for the preceding year;

(5) A copy of its application form, certificate of membership form and of all circulars in use by it;

(6) A certificate from the proper official in its home state, territory, district, province or country that the association is legally organized, that it is authorized to transact business therein and that it has the further qualifications required of domestic associations organized under this chapter and has its assets invested as required by the laws of the

state, territory, district, province or country in which it is organized; and

(7) Such other information as the Commissioner shall require."

Section 37-895 provides that if any foreign fraternal benefit association transacting business under Chapter 9 shall fail to comply with the provisions of said chapter, the Commissioner, after having given to it notice and opportunity to be heard, "may revoke the authority of the association to continue business in this State".

"§ 37-926. Any association or any officer, agent or employee thereof neglecting or refusing to comply with or violating any of the provisions of this chapter the penalty for which neglect, refusal or violation is not specified in this chapter shall be fined not exceeding two hundred dollars upon conviction thereof."

Appellant's numerous exceptions do not require separate discussion. Actually, there is but one issue involved, to wit: Is respondent subject to those provisions of Chapter 11 of Title 12 whereby foreign corporations domesticating in South Carolina are required to file certain papers with, and pay certain fees to, the Secretary of State? In approaching that issue we must bear in mind that Section 12-737, upon which this action is founded, is a penal one; it must, therefore, be strictly construed, and any reasonable doubt as to its applicability must be resolved in respondent's favor. *State ex rel. Moody v. Stem*, 213 S. C. 465, 50 S. E. (2d) 175; *Independence Ins. Co. v. Independent Life & Accident Ins. Co.*, 218 S. C. 22, 61 S. E. (2d) 399; *State ex rel. Callison v. National Linen Service Corp.*, 225 S. C. 232, 81 S. E. (2d) 342.

Title 37, like most massive legislation, has its cloudy spots. For example, so much of Section 37-110 as refers to action by the Secretary of State permitting a foreign insurance company to do business within the state appears somewhat confusing in view of the authority in that

regard conferred upon the Insurance Commissioner by Sections 37-101 and 37-107. (We note that 37-110 is substantially identical with Section 1 of the Act of April 12, 1934, 38 Stat. at Large, p. 1548, which appears in the Civil Code 1942, as Section 7945-2. The title of that Act makes no reference to foreign insurance companies, and indicates that the purpose of the act was to regulate the granting of charters to domestic insurance companies and to provide for service of process upon such companies.) But it seems to us reasonably clear from the portions of Title 37 to which we have referred that by the enactment of the Insurance Law of 1947 and its incorporation in that Title of the 1952 Code the General Assembly intended to vest in the Commissioner the power and duty of supervising and regulating the transaction of the business of insurance within this state, including the power to authorize the transaction of such business by foreign insurance companies. As a natural consequence of that intent, it would appear that the provisions of Chapter 11 of Title 12, which deal with the domestication of foreign corporations generally, do not govern the admission of foreign insurance companies to do business in this state.

In *St. Louis, Iron Mountain and Southern R. Co. v. Commercial Union Insurance Co.*, 139 U. S. 223, 11 S. Ct. 554, 555, 35 L. Ed. 154, the right of an insurance company to enforce any rights under a contract of insurance made by it within the State of Arkansas was challenged upon the ground that it had not complied with the statute of that state entitled "An act to prescribe the conditions upon which Foreign corporations may do business in this state". Acts 1887, Act No. 135. By Section 1 of that statute, a foreign corporation was required, before doing business in the state, to file in the office of the Secretary of State a certificate stating its principal place of business within the state and designating a citizen of the state as its agent upon whom service of process might be made. Section 2 declared that if any such foreign corporation should fail to comply with the provisions of Section 1, all of its contracts with citizens of the

state should be void as to the corporation and that no court of the state should enforce the same in its favor. But that statute was held inapplicable to foreign insurance companies because of the Arkansas statute, which required foreign insurance companies, before doing business in Arkansas, among other things to file with the State Auditor a stipulation for the service of process, reports of financial condition, etc., and provided for the issuance by him of certificates authorizing them to do business within the state. To quote from the opinion in that case:

"It thus appears that the state of Arkansas had established and maintained a distinct system with regard to foreign insurance companies, under the superintendence of the state auditor, by which every such company was required to file with the auditor a stipulation for the service of process upon it, as well as to make full returns of its condition and business to that officer, to report to him the names of all its agents within the state and to receive from him certificates of authority for itself and for each of its agents; evidently contemplating that a foreign insurance company would have no principal place of business within the state, but would transact its business in the usual manner through agents at different places. Such being the settled policy of the state with regard to foreign insurance companies, they cannot reasonably be held to be governed by the act concerning foreign corporations generally, which required a certificate to be filed with the secretary of state, designating an agent upon whom service might be made, and stating the principal place of business within the state. To construe that act as including foreign insurance companies would require the drawing of one of two equally improbable inferences,—either that the only stipulation of such companies for service of process upon them should be filed in a different public office from that in which all other returns and documents relating to such corporations are preserved, or else that their stipulations for such service must be filed both with the auditor and with the secretary of state."

Apart from the effect of Title 37 on appellant's cause, the provisions of Sections 12-721, 12-724 and 12-731, which respondent is charged with having violated, in themselves cast doubt upon their applicability to foreign insurance companies.

Section 12-721 requires every foreign corporation applying for admission to this state to file with the Secretary of State a stipulation or declaration designating its principal place of business within the state for service of process. Section 12-722 provides that upon its failure to file such stipulation or declaration the corporation will be deemed to have appointed the Secretary of State as its agent for such service. It contains also a proviso excluding from its operation "insurance companies or associations required to pay fees to the Department of Insurance of this State." These two sections, expressly interrelated, together formed a single section (7765) of the Civil Code of 1942. In the 1952 codification, not only were the provisions of that section broken down into the two sections (12-721 and 12-722) before mentioned, but also they were incorporated in Chapter 5 of Title 10, relating to service of process in general, as Section 10-424, the first sentence of which reads as follows: "If the suit be against a foreign corporation other than a foreign insurance company the summons and other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12-721." The legislative intent to exclude foreign insurance companies from the operation of Section 12-721 is thus apparent.

Section 12-724 merely supplements Section 12-721, the documents required thereby to be filed in the office of the Secretary of State being "in addition to the declaration referred to in § 12-721." Since the declaration under Section 12-721 is not required of foreign insurance companies, it may reasonably be concluded that Section 12-724 was not intended to apply to them.

Section 12-731 requires that "each foreign corporation domesticated in this State" file annually with the Secretary of State a statement showing the amount of its paid-in capital stock and the names and addresses of its officers and directors. It obviously refers to foreign corporations that have domesticated under the provisions of Chapter 11 of Title 12. Admittedly, respondent has not so domesticated.

Further doubt that the Code provisions here invoked are applicable to respondent arises from the fact that for a considerable period of time (more than two years according to the complaint, which was barred by the statute from interest farther back—more than twenty, according to respondent's counsel), it has been permitted to do business in South Carolina without reference to them. It is not unreasonable to infer that during that period the Secretary of State, efficiently administering the provisions before mentioned with respect to other foreign corporations, has construed them as inapplicable to foreign insurance companies. Cf. *Asmer v. Livingston,* 225 S. C. 341, 82 S. E. (2d) 465; *Roper v. S. C. Tax Commission,* 231 S. C. 587, 99 S. E. (2d) 377.

Appellant argues that respondent has not complied with the insurance law (Title 37), and that it is therefore subject to the general law (Title 12, Chapter 11) relating to domestication of foreign corporations. But whether or not respondent has complied with Title 37 is a matter with which the instant case is not concerned. If, as we think, respondent is not subject to the provisions of Title 12, Chapter 11, this action, which is for recovery of a civil penalty under Section 12-737, falls. Title 37 prescribes penalties for failure to comply with its requirements; but they are not involved here.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.