Caldwell, Ch.
delivered the opinion of the Court.
The only question involved in this case is, can a denizen under the Act of 1799 inherit real estate m South Carolina?
The acquisition of real estate is either by the act of law, or by the act of the party : when the law casts the estate upon the acquirer, independently of his own or of another’s acts, it is generally by descent, escheat, curtesy, or dower.— When the estate is obtained by the act of the party, it is technically termed purchase, which includes every lawful mode by which it can be acquired. (1 Steph. Com 351.) An alien, at common law, cannot acquire a title to real property by descent or by other mere operation of law; (Ib. 406) and although he may purchase it, or take it by devise, yet he is exposed to the danger of being divested of the fee, and of the land being forfeited to the State upon an inquest of office found. (2 Kent Com. 53) But the law quce nihil frustra, never casts the freehold upon an alien heir who cannot keep it: even a natural born subject or citizen cannot take by representation from an alien, because the alien has no heritable blood through which a title can be deduced. Upon the death of an alien who has purchased and held land, it instantly and necessarily (as the freehold cannot be kept in abeyance) without any inquest of office, escheats and vests in the State, because he is incompetent to transmit it by hereditary descent. A denizen is in a middle state between an alien and a natural bom citizen, and although subject to some of the disabilities of the former, is entitled to many of the privileges of the latter: (1 Blac. Com. 374; Com. Dig. Aliens D. 1; 1 Vent. 419.) He may take lands by purchase or devise, which an alien may not, but cannot take by inheritance, for his parent, through whom he must claim, being an alien, had no inheritable blood, and therefore could convey none to the child; from a like defect of hereditary blood the issue of a denizen born before denization cannot inherit to him, but his issue born after may. The only exception to the rulé of deriving title by descent through heritable blood, arose in the case of two sons bom in England of an alien father. One of them purchased land and died without issue ; it was held that the surviving brother could inherit to the other and derive title through the alien father. (Collingwood vs. Pays, 1 Sid. Rep. 193 ; 1 Vent. Rep. 413; contrary to the doctrine of Lord Coke, Co. Lit. 8. A.)
These established rules of the common law must control this case, unless they have been repealed or modified by our Statutes.
The Act of 1799 (5 Stat. of S. C. 355.) provides that “all *320 .free white persons, alien enemies, fugitives from justice; and persons banished from either of the U. States excepted, who now are, or hereafter shall become, residents in this State, shall, on taking and subscribing the oath or affirmation of allegiance before one of the Judges of the Court of Common Pleas, be deemed denizens, so as to enable such persons to purchase and hold real property within this State, and in all other respects to .entitle such person to the like protection from the laws of this State, as citizens are entitled unto,” &c. withholding from them the right to vote for public officers, or of being eligible to such offices. The object of the Act was to remove the disability of aliens who were willing to take the oath of allegiance and desirous of settling in this State, and to place them upon the footing that the letters patent ex donatione regis, put an alien in England: the legal effect of the Act is to waive the right the State has to escheat the lands of an alien during his life, but does not remove the disability of the common law which bars him from inheriting. The words “purchase and hold real estate,” had, at the passing of the Act a well defined meaning Avhich we cannot presume the Legislature either misapprehended or misapplied; and if the object had been to remove all disabilities of alienage and to confer all the rights of citizenship, except those that were political, it is more than probable that it would have been explicitly expressed. The denizen claims the right, in derogation of the common law, under terms that qualify and restrict the privilege merely “to purchase and hold real estate,” and it would be a violation of the rules of construction to infer that the Act intended to confer upon him the right to inherit by descent, (the principal impediment arising from alienage) as this is an entirely different mode of acquiring title. The granting of one privilege to an alien cannot be construed to bestow all the other privileges of a citizen upon him.
Although cotemporaneous exposition is not always conclusive, it is often strongly corroborative of the correct inteiv pretation of a statute; and the note appended to the Act by the learned Judge Brevard, who compiled the digest of our Statutes, indicates his opinion in the negative of this qustion. (1 Brev. Dig. 236 note; Car. Law Journal 214.)
From principles of analogy (for no case can be found expressly in point) we may fairly infer that denization does not remove the disability of an alien to inherit.
In the case of Richards vs. McDaniel et al. (which was three times before the Constitutional Court) Mrs. McDaniel had taken the oath of allegiance when she applied' for naturalization, instead of taking the declaratory oath of her intention *321 to become a citizen of the U. States, agreeably to the Act of Congress, and although the Court held that it was a substantial and sufficient compliance with its requisitions, yet that she was bound to take the oath of allegiance after the prescribed period had expired, before she could be admitted as a citizen, and having failed to do so, she died an alien, and her husband, who was naturalized, could not inherit land through her. (2 Mill Const. Rep. 18 ; 2 Nott and McC. 351; l McCord, 187; ex parte Granstien, 1 Hill Rep. 144.)
Although it is unnecessary to resort to the former Acts of the Legislature to expound the meaning of the Act of 1799, as those of 1696 and 1704 were expressly repealed by that of 1786, which was shortly afterwards annulled and superseded in its further operation by the adoption of the constitution of the U. S. which placed aliens in the same condition as if no Act had been passed removing their disability, and gave origin to the Act of 1799, by which the privilege of denization was conferred upon aliens: (2 Stat. of S. C. 131, 252; 4 Ib. 600, 746; 5 Ib. 355, 523, 547; Chirac vs. Chirac, 2 Wheat. R. 269; 1 Kent Com. 423;) it may also be remarked that their phraseology is very different from the latter — there never was any doubt about their construction — some of them expressly granted to aliens, who complied with their requisitions, the right to inherit by descent; with such models before them it is highly improbable the Legislature intended to grant more than they have expressed. Every State has the unquestion- . able right to establish the rules by which real estate shall descend or be distributed; some of them, Pennsylvania, New Jersey, Ohio, Louisiana and Michigan, have extended to aliens the right of inheriting real property, while others, Massachusetts, New York and South Carolina, have restricted the exercise of their rights over real estate.
It was argued that the Act of 1791, abolishing the right of primogeniture, and giving an equitable distribution of the real estates of intestates, had abrogated the English rules of descent and introduced a new system.
It was not a primary or incidental object of this Act to abolish the disability of aliens to inherit real estate, and if such a construction should be given to it, then alienism would be no bar to inheritance: ( a bastard cannot inherit, 1 Blac. Com. 459; Chit. on descents, 27, 28; 2 Cruise Dig. 374; Barewick vs. Miller et al. 4 Des. E. R. 434; Jones vs. Burden, Ib. 439:) but the right of the heir depends not merely upon the Act of Distributions but upon his ability to inherit: thus it has been repeatedly ruled, that when the next of who would be entitled to inherit if no't an is disabled *322 to take, by reason of his alienage, yet the land shall not es-cheat, if there be an heir capable of taking by succession, (Ennas vs. Franklin, Brev. Rep.; Escheator of Char. Dist. vs. Ex’rs of White, 2 Brev. Rep. 398; Laborde vs. Weightman, 1 Speers R. 535.)
The Act does not contemplate an alien as coming within its provision, for no rule is better established than when an alien would take by a course of descent, then the estate shall go over to him to whom it would have gone if the alien had been already dead. (Hamilton vs. Fleetwood; North et al. vs. Valk et al. Dud. E. R. 215; Edwards vs. Barksdale, 2 Hill.Ch. R. 416.)
The Supreme Court of the U. S. held in Orr vs. Hodgen, 4 Wheat. 416,— '“when a person dies leaving issue who are aliens, the latter are not deemed his heirs at law, for they have no inheritable blood, but the estate descends to the next of kin who have inheritable blood, in the same manner as if no such alien issue were in existence.”
The Statute of distributions has left the law on the subject of alienage where it found it, and has merely modified the canons of descent, without repealing the common law in other respects, and if it had not, proximity of blood under its provisions would invariably have been preferred, instead of having been postponed, in every degree from the nearest to the remotest, in favor of such as have inheritable blood. (Vaux vs. Nesbit, 1 McCord C. R. 352; Edwards vs. Barksdale, adm'r, 2 Hill Ch. R. 416, 419.) The succession is therefore cast upon the heir by operation of law, which declares an alien incapable of inheriting, and transmits it to the next of kin that is under no disability.
In McKellar vs. McKellar et al. (Ms. cases, vol. B. 251, in 1820, note to Speers Rep. 536) it was decided that tbegrand nephews who were citizens were entitled to the real estate of the intestate who died without leaving a widow or issue, in preference to his brothers who were aliens that had removed to this State and had given notice of their intention to become citizens, but had not completed their naturalization when he died. The brothers urged their claims under the provisions of the Act of 1807 (5 Stat. of S. C. 547) but the Court held that they were not entitled, “ unless this is construed to be a new law of descent which has abolished in future a great rule of policy which forms a part of the legal jurisprudence of every country.” This Act was passed eight years after the Act of denization, which was adopted eight years after the statute of distributions, and we cannot perceive that they have changed the law of descents depending upon inheritable *323 Mood. We are therefore of opinion, that a denizen is not entitled to a distributive share of the real estate of an intestate, and it is ordered and decreed that Matilda McClenaghan, the widow of John McClenaghan, dec’d, is entitled to the whole real estate of her deceased husband,.and that the Circuit decree be reversed so far as it decreed that Horatio McClenaghan, a denizen and brother of the intestate, was entitled to a moiety of said estate, and ordered a writ of partition to divide the same.
Harper, Ch. and Johnston, Ch. concurred.

Decree reversed.