592 S.E.2d 335

**Jack L. HINTON, Jr., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF PROBATION, PAROLE AND PARDON SERVICES, Respondent.**

No. 3722.

Court of Appeals of South Carolina.

Heard Dec. 10, 2003.

Decided Jan. 12, 2004.

Rehearing Denied Feb. 20, 2004.

328

330

William M. Hagood, III, of Greenville, for Appellant.

Deputy Director for Legal Services Teresa A. Knox, Legal Counsel Tommy Evans and Legal Counsel J. Benjamin Aplin, all of Columbia, for Respondent.

ANDERSON, J.:

Jack L. Hinton appeals from a declaratory judgment that his out-of-state conviction rendered him ineligible for parole by virtue of South Carolina's subsequent violent offender statute. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Since June 17, 1992, Jack L. Hinton has been serving a thirty-year sentence pursuant to a South Carolina kidnapping conviction. Prior to the present conviction, Appellant completed a jail sentence in Ohio for a 1986 conviction for abduction.

Upon Appellant's incarceration, the South Carolina Department of Corrections ("SCDC") provided a projected parole eligibility date of February 19, 2000. Based on this projected date, the South Carolina Department of Probation, Parole and Pardon Services ("the Department") conducted a pre-parole investigation and presented Appellant's case to the Parole Board for a hearing on March 1, 2000. Appellant was denied parole shortly thereafter.

Before a second parole hearing scheduled for April 17, 2002, the Department notified Appellant that he was not eligible to be considered for parole pursuant to South Carolina's subsequent violent offender statute.

## ISSUE

For purposes of applying the subsequent violent offender provision of section 24–21–640, should the exclusive list of "violent crimes" in section 16–1–60 be interpreted to implicitly include out-of-state convictions?

## LAW/ANALYSIS

The Omnibus Crime Bill of June 3, 1986, enacted section 16–1–60 and amended section 24–21–640 of the South Carolina

Code to prohibit the Parole Board from granting parole "to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in § 16–1–60." S.C.Code Ann. § 24–21–640 (Supp.2001). Section 16–1–60 codifies which crimes are considered "violent crimes." S.C.Code Ann. § 16–1–60 (Supp.2001). Effective January 1, 1994, the General Assembly amended section 16–1–60 so that each offense's name was parenthetically followed by its South Carolina Code section. The statute was again amended on January 12, 1995, this time adding the statute's final sentence: "Only those offenses specifically enumerated in this section are considered violent offenses." S.C.Code Ann. § 16–1–60 (Supp.2001).

 South Carolina has long recognized the principle that penal statutes are to be strictly construed. *State v. Germany*, 216 S.C. 182, 188, 57 S.E.2d 165, 168 (1949) ("[A] criminal statute must be strictly construed against the State and any doubt must be resolved in favor of the defendant....."); *State v. Lewis*, 141 S.C. 207, 211, 139 S.E. 386, 389 (1927) ("This is a penal statute, and must be strictly construed."); *State v. Dupree*, 354 S.C. 676, 693, 583 S.E.2d 437, 446 (Ct.App.2003) ("Penal statutes are strictly construed against the State and in favor of the defendant."). At the same time, the cardinal rule of statutory construction requires that we endeavor to "ascertain and effectuate the intent of the legislature." *Branch v. City of Myrtle Beach*, 340 S.C. 405, 409, 532 S.E.2d 289, 292 (2000); *State v. Baucom*, 340 S.C. 339, 531 S.E.2d 922 (2000); *State v. Morgan*, 352 S.C. 359, 365, 574 S.E.2d 203, 206 (Ct.App.2002). A law must be interpreted reasonably and practically, consistent with the purpose and policy of the General Assembly. *Abell v. Bell*, 229 S.C. 1, 4, 91 S.E.2d 548, 550 (1956); *see also Georgia–Carolina Bail Bonds, Inc. v. County of Aiken*, 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003) ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute.").

 The terms must be construed in context and their meaning determined by looking at the other terms used in the statute. *S. Mut. Church Ins. Co. v. South Carolina Windstorm & Hail Underwriting Ass'n*, 306 S.C. 339, 342, 412

S.E.2d 377, 379 (1991); *Dupree,* 354 S.C. at 693, 583 S.E.2d at 446. Courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 16, 492 S.E.2d 777, 779 (1997); *see also Stephen v. Avins Constr. Co.,* 324 S.C. 334, 340, 478 S.E.2d 74, 77 (Ct.App.1996) (finding statutory provisions should be given reasonable and practical construction consistent with purpose and policy of entire act). In interpreting a statute, the language of the statute must be construed in a sense which harmonizes with its subject matter and accords with· its general purpose. *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992); *Multi–Cinema, Ltd. v. S.C. Tax Comm'n,* 292 S.C. 411, 413, 357 S.E.2d 6, 7 (1987); *State v. Hudson,* 336 S.C. 237, 246, 519 S.E.2d 577, 582 (Ct.App.1999). Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and each given effect, if it can be done by any reasonable construction. *Higgins v. State,* 307 S.C. 446, 449, 415 S.E.2d 799, 801 (1992); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *see also Abell,* 229 S.C. at 5, 91 S.E.2d at 550 ("But where the language of the statute gives rise to doubt or uncertainty as to the legislative intent, the search for that intent may range beyond the borders of the statute itself; for it must be gathered from a reading of the statute as a whole in the light of the circumstances and conditions existing at the time of its enactment.").

The legislature's intent should be ascertained primarily from the plain language of the statute. *Georgia–Carolina Bail Bonds,* 354 S.C. at 23, 579 S.E.2d at 336. Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996); *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck,* 330 S.C. 371, 375, 498 S.E.2d 894, 898 (Ct.App.1998). When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Hudson,* 336 S.C. at 246, 519 S.E.2d at 581.

If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no need to employ rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); *City of Camden v. Brassell*, 326 S.C. 556, 560, 486 S.E.2d 492, 494 (Ct.App.1997). When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Cooper v. Moore*, 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002); *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 323, 440 S.E.2d 373, 374 (1994); *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing, & Regulation*, 337 S.C. 476, 489, 523 S.E.2d 795, 802 (Ct.App.1999); *see also Parsons v. Georgetown Steel*, 318 S.C. 63, 65, 456 S.E.2d 366, 367 (1995) ("Where the terms of a relevant statute are clear, there is no room for construction."). However, if the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan*, 352 S.C. at 367, 574 S.E.2d at 207; *Hudson*, 336 S.C. at 247, 519 S.E.2d at 582. The statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Dupree*, 354 S.C. at 694, 583 S.E.2d at 447; *Brassell*, 326 S.C. at 561, 486 S.E.2d at 495. Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *City of Sumter Police Dep't*, 330 S.C. at 376, 498 S.E.2d at 896.

On two occasions, the question of the applicability of extra-jurisdictional criminal convictions to South Carolina law has been reviewed, once by our supreme court and once by this court. The supreme court examined the issue in *State v. Breech*, 308 S.C. 356, 417 S.E.2d 873 (1992), which involved a defendant charged with unlawfully driving under the influence of alcohol. Specifically, the issue before the court was whether the defendant's prior out-of-state convictions were within the scope of section 56–5–2940, which enhanced the penalty for repeat offenders. The version of section 56–5–2940 in effect when the supreme court decided *Breech* expounded:

For the purposes of this chapter any conviction ... for the violation of any law or ordinance of this State or any

municipality of this State that prohibits any person from operating a motor vehicle while under the influence of intoxicating liquor, drugs, or narcotics shall constitute a prior offense for the purpose of any prosecution for any subsequent violation hereof.

S.C.Code Ann. § 56–5–2940 (1991).

 Noting that the rules of statutory construction required that criminal statutes be construed strictly with ambiguities resolved in favor of the defendant, the supreme court determined that the statute did not cover out-of-state convictions because explicit language in the statute limited its coverage to "violation of any law or ordinance of *this* State or any municipality of *this* State." *Breech*, 308 S.C. at 358, 417 S.E.2d at 874 (quoting S.C.Code Ann. § 56–5–2940 (1991)). Effective June 30, 1992, the General Assembly subsequently amended section 56–5–2940 to provide for enhanced penalties when the prior convictions were from another state: For the purposes of this chapter any conviction, entry of a plea of guilty or of nolo contendere, or forfeiture of bail for the violation of any law or ordinance of this or any other state or any municipality of this or any other state that prohibits a person from operating a motor vehicle while under the influence of intoxicating liquor, drugs, or narcotics constitutes a prior offense for the purpose of any prosecution for any subsequent violation hereof. S.C.Code Ann 56–5–2940. By virtue of the statutory amendment, the State is now permitted to include out-of-state convictions in determining whether a DUI committed on or after June 30, 1992 is a second or subsequent offense. *State v. Tennyson*, 315 S.C. 471, 471–72, 445 S.E.2d 630, 630 (1994).

We recently addressed the same question for an entirely different statute in *State v. Zulfer*, 345 S.C. 258, 547 S.E.2d 885 (Ct.App.2001), *cert. dismissed*, 353 S.C. 537, 579 S.E.2d 317 (2003). *Zulfer* related to section 16–11–311(A)(2), which allows a burglary offense to be enhanced to first-degree burglary if "the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both." S.C.Code Ann. § 16–11–311(A)(2) (2003).

In concluding that the statute applied to out-of-state burglary and housebreaking convictions, we stated that, unlike the "of this state" language in *Breech,* the statute in *Zulfer* contained no language explicitly providing jurisdictional limits. We further noted that to "restrict the predicate offenses for a first-degree burglary charge to acts occurring within South Carolina would give the statute a meaning that the legislature clearly did not intend." *State v. Zulfer,* 345 S.C. 258, 263, 547 S.E.2d 885, 887 (Ct.App.2001).

Other states have examined the use of prior convictions from another state as the basis for the enhancement of punishment for an offense committed in the forum state. If the statute contains limiting language, the statute is determinative of whether the prior out-of-state conviction may be utilized to enhance the punishment. The Supreme Court of New Hampshire held in *New Hampshire v. Cardin,* 102 N.H. 314, 156 A.2d 118 (1959) the defendant, who was charged with operating a motor vehicle while under the influence of intoxicating liquors, could not be considered as a second offender when his first conviction was in Massachusetts. Their statute reads:

> Any person who shall be convicted of operating, or attempting to operate, a motor vehicle upon any way while under the influence of intoxicating liquor ... shall be imprisoned.... Upon a second conviction, he shall be imprisoned ... his license shall be revoked and he shall be ineligible for a license for the next three calendar years.

*Cardin,* 156 A.2d at 119 (quoting N.H.Rev.Stat. Ann. § 262:19). "Way" is defined as "any public highway, street, avenue, road, alley, park or parkway, or any private way laid out under authority of statute." *Id.* The court professed: "The statute obviously refers to a public way within the State of New Hampshire. Whenever a conviction in another state is to be considered in determining whether a second offense has been committed under a local statute the Legislature has so stated in express terms." *Id.*

In *New Jersey v. Copeman,* 197 N.J.Super. 261, 484 A.2d 1250 (1984), the Superior Court of New Jersey, Appellate Division reviewed whether their mandatory extended term of imprisonment for a person previously convicted of an offense

involving the use or possession of a firearm encompasses prior out-of-state convictions. The statute declares:

> If the grounds specified in subsection d. are found ... the court shall sentence the defendant to an extended term as required by 2C:43–6c....

> ....

> d. Second offender with a firearm. The defendant is at least 18 years of age and has been previously convicted of any of the following crimes: 2C:11–3, 2C:11–4, 2C:12–1b., 2C:13–1, 2C:14–2a., 2C:14–3a., 2C:15–1, 2C:18–2, 2C:29–5, 2C:39–4a., or has been previously convicted of an offense under Title 2A of the New Jersey Statutes which is equivalent of the offenses enumerated in this subsection and he used or possessed a firearm, as defined in 2C:39–1f., in the course of committing or attempting to commit any of these crimes, including the immediate flight therefrom.

N.J. Stat. Ann. 2C:44–3. N.J. Stat. Ann. section 2C:43–6c provides:

> A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44–3d., shall be sentenced by the court to an extended term as authorized by 2C:43–7c., notwithstanding that extended terms are ordinarily discretionary with the court.

The court held:

> [The defendant] was not previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44–3d. N.J.S.A. 2C:44–3d is precise and unambiguous in its definition of the prior crimes which mandate imposition of an extended term. Certain Title 2C offenses are specified and any other offense under Title 2A of the New Jersey Statutes which is equivalent of the offenses enumerated in this subsection.... No other offenses are included; subsection d. does not allow equivalent offenses under the laws of

foreign jurisdictions to trigger the mandatory extended term provision.

*Copeman*, 484 A.2d at 1252.

In *Missouri v. Rellihan*, 662 S.W.2d 535 (Mo.Ct.App.1983), the appellant argued the trial court erred in proclaiming him to be a prior offender. A prior offender is defined in their statute as "one who has pleaded guilty to or has been found guilty of one felony." *Id.* at 543 (quoting Mo.Rev.Stat. § 558.016.2). The court ruled:

The foregoing section (558.016.2), by its very wording, sets forth no requirement that the term felony is restricted or limited to felonies committed in Missouri. To state it another way, it is clear to this court that the Missouri General Assembly intended the term felony to define and thus include, felony offenses from other jurisdictions—federal and sister states. . . . The General Assembly, had it intended otherwise, could have included limiting language, such as has been found guilty of one felony *in this state*, or words of similar limitation. No such language having been included by the General Assembly, it is quite clear that the General Assembly intended the term felony to be a term of inclusion which permits the trial court to impose sentencing, instead of the jury, for a prior felony offense committed within, and subject to, federal and sister state jurisdictions.

*Id.* at 544–45.

South Carolina's subsequent violent offender statute establishes:

The board must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 16–1–60.

S.C.Code Ann. § 24–21–640 (Supp.2001). Section 16–1–60, which was enacted concurrently in 1986, instructs:

For purposes of definition under South Carolina law, a violent crime includes the offenses of . . . kidnapping (Section 16–3–910) . . . . Only those offenses specifically enumerated in this section are considered violent offenses.

S.C.Code Ann. § 16–1–60 (Supp.2001).

Contrastive to *Breech* where the legislature explicitly limited the statute's jurisdictional coverage, and dissimilar to

*Zulfer* where the statute contained no limits whatsoever, the statute in this case was amended in 1995 to include its explicitly exclusionary ultimate sentence, but it is not clear whether or not the General Assembly intended for that language to exclude convictions of other jurisdictions. In an informal opinion issued on May 24, 1995, an Assistant Deputy Attorney General suggested that even after the January 12, 1995 amendment, the statute encompasses crimes committed in other states or against federal law, provided that the crime for which the offender was convicted shares the same elements with one of the enumerated violent offenses of section 16–1–60. S.C. Op. Atty. Gen. (1995 WL 803666).

Although we do not think it sensible to place undue emphasis on statutory nomenclature differences, we cannot discard as without import the glaring peculiarity that the crime of abduction appears nowhere among the enumerated offenses of section 16–1–60. The State urges the adoption of a same-elements test, which it contends resolves this problem. The Department explained that in following this approach, it looks to whether the particular actions taken by the defendant which satisfy the elements of the crime in the other state would satisfy the elements of one of the enumerated crimes of section 16–1–60.

We find little evidence that such a test was the intent of our legislature for this particular statute, for if it had been, such an intent would have been made more overt, as is the case with section 17–25–45, which was drafted to explicitly include "a federal or out-of-state conviction for an offense that would be classified as a most serious offense under this section." S.C.Code Ann. § 17–25–45 (2000).

Moreover, we find such an approach unduly problematic, for we are uncertain how the Parole Board could reliably know on which particular elements of an offense a jury based its guilty verdict. Indeed, as is the case with Ohio's codification for abduction, there are multiple avenues by which a jury can determine that an accused committed the crime of abduction. The result is that, although some abduction convictions may fit within the elements of South Carolina's codification of kidnapping, some abduction convictions invariably will not.

Considering the relevant statutes in tandem illustrates this disconcerting predicament. Ohio has codified abduction as follows:

(A) No person, without privilege to do so, shall knowingly do any of the following:

(1) By force or threat, remove another from the place where the other person is found;

(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear;

(3) Hold another in a condition of involuntary servitude.

(B) Whoever violates this section is guilty of abduction, a felony of the third degree.

Ohio Rev.Code Ann. § 2905.02 (West 2003). South Carolina has codified kidnapping as the following:

Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, is guilty of a felony and, upon conviction, must be imprisoned for a period not to exceed thirty years unless sentenced for murder as provided in Section 16-3-20.

S.C.Code Ann. § 16-3-910 (2003).

■■■■■■ Based on one set of facts and circumstances, an accused in Ohio may be prosecuted for abduction under several theories—(1) the accused "remove[d] another from the place where the other person is found," (2) the accused "restrain[ed] the liberty of another person" and still another being that he "[b]y force or threat, restrain[ed] the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place[d] the other person in fear," and (3) the accused "h[e]ld another in a condition of involuntary servitude." South Carolina's kidnapping statute requires proof of an unlawful act taking one of several alternative forms: seizure, confinement, inveiglement, decoy, kidnapping, abduction, or carrying away. *State v. Berntsen,* 295 S.C. 52, 54, 367 S.E.2d 152, 153 (1988); *see State v. Owens,* 291 S.C. 116, 118, 352 S.E.2d 474, 475 (1987). "Kidnaping is a continuing offense." *State v. Tucker,* 334 S.C. 1, 13, 512 S.E.2d 99, 105 (1999); *see State v. Bennett,* 328 S.C. 251, 264, 493 S.E.2d 845,

851. The offense commences when one is wrongfully deprived of freedom and continues until freedom is restored. *State v. Hall*, 280 S.C. 74, 78, 310 S.E.2d 429, 431 (1983) (citing *State v. Ziegler*, 274 S.C. 6, 10, 260 S.E.2d 182, 184 (1979)). The *mens rea* required for the crime of kidnapping . . . is knowledge. *Tucker*, 334 S.C. at 13, 512 S.E.2d at 105; *see State v. Jefferies*, 316 S.C. 13, 19, 446 S.E.2d 427, 430–31 (1994).

Given that no explication accompanies a jury's finding of guilt, we are unclear how the Parole Board can differentiate which theory the jury ultimately embraced—or alternatively stated, which elements the jury found satisfied—in returning a guilty verdict. Appellant's Ohio indictment for kidnapping alleged that he

without privilege to do so, knowingly and by force or threat, restrained Anne Miller of her liberty, under circumstances which created a risk of physical harm to the said Anne Miller or which place[d] the Anne Miller in fear, in violation of section 2905.02 of the Ohio revised code and against the peace and dignity of the state of Ohio.

██ Analyzing this indictment, we cannot say with any degree of certitude whether the jury's guilty verdict was within the scope of our kidnapping statute. We find it unacceptable that the Parole Board should look to the so-called "*facts*" of the case to make this determination, for the "*facts*" are almost always disputed, and neither this court nor the Parole Board has any way of extricating which particular "facts" the jury decided were true and which were not. The Parole Board should not undertake such a determination in what would amount to a de facto second trial and an egregious due process violation.

██ Disavowing the same-elements test, the 1995 amendment to section 16–1–60, makes plain that the General Assembly intended to prevent broadening of the statute's coverage. We are unable to discern the intent of the General Assembly in regard to the addition of the final sentence. If we determine that the sentence was meant only to prevent the expansion of "violent crimes" to other South Carolina offenses not specifically enumerated in section 16–1–60, then we effectively give the language no meaning because the principle of *inclusio unius est exclusio alterius* (the inclusion of one is the exclu-

sion of another) already prohibits inclusion of non-enumerated offenses. *See Brown v. State,* 343 S.C. 342, 349, 540 S.E.2d 846, 850 (2001) ("Thus, the maxim of *expressio unius est exclusio alterius* . . . applies to exclude day care centers from falling within the statute since day care centers are not expressly included."). Such an interpretation violates the rule that we should seek a construction that gives effect to every word of a statute rather than adopting an interpretation that renders a portion meaningless. *See McClenaghan v. McClenaghan,* 20 S.C. Eq. (1 Strob. Eq.) 295 (1847) (observing "if the clause means any thing, and we are obliged to find some meaning for it, on the maxim *ut res magis valeat quam pereat* ").

In enacting the 1995 amendment, the General Assembly intended to circumscribe application of the statute. Because we cannot judicially fashion a demarcation line, we are bound to construe the statute with exactitude. First, when the nature of restrictive language is irresolvedly ambiguous, prudence dictates that we adopt the interpretation least likely to run afoul of the legislature's restrictive intent. In this case, that interpretation is one of strict construction. Second, in applying such an interpretation, our practice remains in accord with the requirement that penal statutes be construed strictly against the State. Third, by adopting such an interpretation of section 16–1–60, we avoid the needless entanglement of a same-elements test.

Finally, we note that our decision does not mean that Appellant will ever succeed in being paroled. Instead, our ruling merely assures that the authority to grant or deny parole remains with the body that can most capably make such challenging, case-by-case determinations: the Parole Board.

**REVERSED.**

CURETON, A.J., concurs.

GOOLSBY, J., concurs in a separate opinion.

GOOLSBY, J. (concurring in result):.

I concur in the result reached by the majority, that an Ohio conviction for the crime of abduction does not qualify as a

second or subsequent conviction under S.C.Code Ann. § 24–21–640 (Supp.2002), a statute that prohibits the Board of South Carolina Probation, Parole and Pardon Services from granting a parole to a "prisoner serving a second or subsequent conviction ... for violent crimes as defined in Section 16–1–60." I simply differ with the majority in how we should arrive at that conclusion.

The respondent Jack L. Hinton, a prisoner serving a sentence for kidnapping since his conviction in 1992 in Greenville County, South Carolina, once served a sentence of from three to ten years following his conviction in 1986 in Hamilton County, Ohio, for the offense of abduction, an offense proscribed by Ohio Rev.Code Ann. § 2905.02 (2002).

Section 24–21–640 provides in part as follows:

The board must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 16–1–60.

At the time of his conviction in South Carolina in 1992, S.C.Code Ann. § 16–1–60 (1991),[1] provided in relevant part:

For purposes of definition under South Carolina law, a violent crime includes the offenses of ... kidnapping....

A related statute, S.C.Code Ann. § 16–1–70 (1991), defined a "nonviolent crime" as including "all offenses not specifically enumerated in Section 16–1–60."

Subsequent amendments to Section 16–1–60,[2] among other things, added code sections to identify the offenses defined as violent crimes and a second sentence which reads, "Only those offenses specifically enumerated in this section are considered violent offenses."

Because Section 16–1–60 is a penal statute, its terms must be strictly construed against the State and in favor of the defendant.[3] We, as judges, can add nothing to the words of

---

1. *See* Act No. 184, 1993 S.C. Acts 3239.

2. *See* Act No. 7, 1995 S.C. Acts 50; Act No. 83, 1995 S.C. Acts 556; Act No. 113, 1997 S.C. Acts 524; Act No. 136, 1997 S.C. Acts 688; Act No. 402, 1998 S.C. Acts 2450; Act No. 261, 2000 S.C. Acts 1929.

3. *State v. Cutler*, 274 S.C. 376, 378, 264 S.E.2d 420, 420–21 (1980).

the statute either by inference or intendment but must construe those words literally.[4]

At no point in its history has Section 16–1–60 defined the offense of abduction in violation of Ohio Rev.Code Ann. § 2905.02 (2002) as a violent crime. That offense throughout has not been one "specifically enumerated in Section 16–1–60." According a strict construction to Section 16–1–60 and a liberal construction to Section 16–1–70, we can only conclude that the term "violent crime," as used in Section 16–1–60 does not include the offense of abduction in violation of Ohio Rev.Code Ann. § 2905.02 (2002).

This court's decision in *State v. Zulfer*,[5] a case that dealt with S.C.Code Ann. § 16–11–311(A)(2) (Supp.2000), does not aid the State. The wording that statute employs differs considerably from that of Section 16–1–60.

---

**4.** *State v. Lewis,* 141 S.C. 207, 220–21, 139 S.E. 386, 391 (1927).

**5.** 345 S.C. 258, 547 S.E.2d 885 (Ct.App.2001), *cert. dismissed,* 353 S.C. 537, 579 S.E.2d 317 (2003).