**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Board of Financial Institutions,
Appellant,

v.

CDM Corporation, Inc. and Guardian Fiduciary Services,
LLC, Respondents.

Appellate Case No. 2023-000017

———————

Appeal From Georgetown County
Joe M. Crosby, Master-in-Equity

———————

Unpublished Opinion No. 2025-UP-169
Heard February 12, 2025 – Filed May 28, 2025

———————

**REVERSED AND REMANDED**

———————

William J. Condon, Jr., of West Columbia, and Shawn David Eubanks, of Columbia, for Appellant.

James Dunbar Myrick, of Charleston, and Matthew Todd Carroll, of Columbia, both of Womble Bond Dickinson (US) LLP, and Molly McKenna McDermid, of Charleston, for Respondents.

Attorney General Alan McCrory Wilson, Solicitor General Robert D. Cook, Deputy Solicitor General J. Emory Smith, Jr., and Assistant Deputy Solicitor General Thomas Tyler Hydrick, all for Amicus Curiae South Carolina Attorney General.

---

**PER CURIAM:** Appellant, the State Board of Financial Institutions (BOFI), seeks review of an order of the Master-in-Equity concluding that Respondents, CDM Corporation, Inc. (CDM) and Guardian Fiduciary Services, LLC (Guardian), were not required to seek BOFI's approval pursuant to section 34-21-10 of the South Carolina Code (2020) before providing services as a personal representative of an estate, a conservator, a guardian, or an agent pursuant to a power of attorney because these services do not fall within the undefined term "trust business" for purposes of section 34-21-10.[1] BOFI argues that the legislature intended to include all fiduciary services within the meaning of a trust business. BOFI also challenges the master's conclusion that the probate court's authority over personal representatives, conservators, guardians, and agents automatically preempts BOFI's regulatory authority over them. BOFI contends that its regulatory authority and the jurisdiction of the probate court can coexist. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Respondents are two small businesses created by their principal, Stephen Mantell, "for the purpose of providing needed [fiduciary] services for elderly, disabled, and otherwise compromised individuals in South Carolina." Most of Respondents' clients are referrals from South Carolina attorneys who are unable to pay the large fees of some trust companies. Mantell claims that not only these attorneys but also South Carolina probate judges have worked with him "for years and trust [him] in" the positions of guardian, conservator, personal representative, and agent pursuant to a power of attorney. Although Mantell would be exempt from the requirement in section 34-21-10 to obtain BOFI's approval if he were acting as an individual, he states, "Operating through my company, instead of individually,

---

[1] Section 34-21-10 states, in part, "No corporation, partnership or other person shall conduct a trust business in this State without first making a written application to [BOFI] and receiving written approval from [BOFI]." Section 34-21-10 exempts individuals from this requirement.

2

allows me to obtain insurance," which he claims benefits not only himself but also his clients.

On June 29, 2020, BOFI received a complaint that Respondents "appeared to be conducting [a] trust business without prior written approval of [BOFI], as required by S.C. Code Ann. § 34-21-10." BOFI's then-Commissioner of Banking, Richards Green, observed that Respondents' "website advertised the following services: 'Trusteeship,' 'Power of Attorney,' 'Personal Representative,' 'Guardianship' (including a representation that [Respondents were] 'a certified professional guardian agency'), and 'Conservator.'" Commissioner Green sent a letter to Respondents advising them that they were conducting an unlawful trust business and requesting information.[2] Respondents sent some information to BOFI, but Commissioner Green advised Respondents that the information was incomplete. Commissioner Green also advised Respondents that upon his review of the information they sent, it appeared that they were conducting an unlawful trust business.

Subsequently, BOFI received a second complaint concerning Respondents' businesses. Although BOFI gave Respondents "several extensions of time to respond," Respondents failed to provide the requested information. Ultimately, BOFI authorized Commissioner Green to send a "cease and desist" letter to Respondents and to "take legal action," if necessary.

---

[2] In his letter, Commissioner Green stated that he had learned of CDM's services for the Patricia A. Fearson Revocable Trust. Commissioner Green requested the following additional information:

> 1. A written response to our concern that CDM and Guardian has or is conducting trust business in South Carolina without [BOFI] approval, including the facts and reasoning of why each company has not sought such approval from [BOFI]. Please also provide any supporting materials.

> 2. A written list of other trusts, estates, and other persons for whom CDM, Guardian, or any related company provides or has provided trust business in South Carolina since January 1, 2016.

On October 26, 2020, BOFI filed this action seeking a declaratory judgment and a permanent injunction against Respondents conducting trust business activities without BOFI's prior approval. In their Answer and Counterclaim, Respondents stated that as of that date, they had "either extricated themselves from all matters involving a trust, or ha[d] taken affirmative steps to extricate themselves from matters involving a trust." Respondents also stated that when "appointed to various roles, the companies are generally appointed by and through their principal, Stephen Mantell," and they denied that the "services they [then-]currently perform[ed] constitute[d] 'trust business services.'"

Additionally, Respondents claimed that they had previously contacted BOFI and were "told by BOFI that approval was not required for their businesses" because they "would not be managing investments on behalf of trusts."[3] Respondents asserted a counterclaim seeking a declaratory judgment that their businesses do not constitute trust businesses, are lawful, and are not subject to regulation by BOFI.

After the case was referred to the master, but before the parties filed cross-motions for summary judgment, BOFI unanimously adopted a policy statement "affirm[ing] BOFI's longstanding industry and regulatory interpretation of the phrase 'trust business' as used in S.C. Code Ann. § 34-21-10." The policy statement asserted that BOFI interprets the phrase "conduct a trust business" as used in section 34-21-10 to include serving as a personal representative of a decedent's estate, a guardian, a conservator, or an agent pursuant to a power of attorney.

The master did not conduct a hearing but issued a written order on November 3, 2022, granting partial summary judgment to BOFI as to Respondents' services as a trustee and enjoining Respondents from advertising for or providing these services. As to Respondents' other fiduciary services, the master granted Respondents'

---

[3] The Affidavit of Stephen P. Mantell, Respondents' principal, states, in part:

> I had two telephone conversations with Banking Commissioner Louie Jacobs in 2011. We discussed the various services provided by my companies in detail, including conservatorships, powers of attorney, acting as a personal representative, and trusteeships. [Commissioner] Jacobs informed me that, because my companies were not actively managing investments, we were not in violation of South Carolina's regulations.

summary judgment motion, concluding that those services did not fall within the term "trust business" as set forth in section 34-21-10. The master also concluded that these services were outside of BOFI's jurisdiction because they were regulated by the South Carolina Probate Code (Title 62). The master later denied BOFI's motion for partial reconsideration. This appeal followed.

## LAW/ANALYSIS

### I.      Statutory Interpretation

BOFI asserts the master erred by determining that the undefined term "trust business" in section 34-21-10 excludes the services of a personal representative, conservator, guardian, and agent pursuant to a power of attorney.

Section 34-21-10 provides,

> No corporation, partnership or other person shall conduct a *trust business* in this State without first making a written application to [BOFI][4] and receiving written approval from [BOFI]. Before any such application shall be approved, [BOFI] shall make an investigation to determine whether or not the applicant has complied with all the provisions of law, whether in the judgment of [BOFI] the applicant is qualified to conduct such a business and whether the conduct of such a business would serve the public interest, taking into consideration local circumstances and conditions at the place where such applicant proposes to do business; provided, however, that any person actively engaged in conducting a trust business in this State on January 1, 1972, shall not be required to make the application and receive the approval provided for herein. Provided, further, that nothing contained in this section shall prevent a natural person or a national banking association having its principal place of business in this State from qualifying and acting as trustee, *executor,*

---

[4] This alteration is to the language "the State Board of Bank Control." According to BOFI, the State Board of Bank Control is now the State Board of Financial Institutions (BOFI).

5

> *administrator, guardian, committee or in any other*
> *fiduciary capacity*.

(emphases added).

"The cardinal rule of statutory construction is that we are to ascertain and effectuate the actual intent of the legislature." *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). "In interpreting a statute, the court will give words their plain and *ordinary* meaning[] and will not resort to forced construction that would limit or expand the statute." *State v. Johnson*, 396 S.C. 182, 188, 720 S.E.2d 516, 520 (Ct. App. 2011) (emphasis added).

> Under the plain meaning rule, it is not the province of the court to change the meaning of a clear and unambiguous statute. Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.

*S.C. Energy Users Comm. v. S.C. Pub. Serv. Comm'n*, 388 S.C. 486, 491, 697 S.E.2d 587, 590 (2010) (citation omitted). Further, "[t]he intention of the legislature must be gleaned from *the entire section and not simply clauses taken out of context*." *Singletary v. S.C. Dep't of Educ.*, 316 S.C. 153, 162, 447 S.E.2d 231, 236 (Ct. App. 1994) (emphasis added).

Respondents argue that the plain language of section 34-21-10 limits a trust business to one that administers trusts only. Although Respondents make colorable arguments, they are couched in terms of the absurdity of any other interpretation in light of the special circumstances of Respondents' particular businesses. Respondents seem particularly concerned about the amounts of BOFI's application fee and annual supervisory fee.[5] Although Respondents' principal, Stephen Mantell, is sympathetic, this court must be mindful of the far-reaching implications of section 34-21-10. The legislature's intent underlying the term "trust business" necessarily addresses circumstances far beyond the specific facts of this case.

---

[5] In their brief, Respondents state, "[T]he source of this litigation appears to be little more than [Respondents'] failure to pay a $15,000 application fee and annual $19,600 'supervisory fee' to [BOFI], and their refusal to voluntarily subject themselves to [BOFI's] jurisdiction."

Giving the term "trust business" its "ordinary meaning" establishes that *all* institutional fiduciaries fall within BOFI's regulatory authority. The usual and customary meaning of the term "trust" is recognized in secondary sources of law as including a range of fiduciary relationships. "A trust is defined as the right, enforceable solely in equity, to the beneficial enjoyment of property, the legal title to which is vested in another, but the word 'trust' also is frequently employed to indicate duties, relations, and responsibilities that are not strictly technical trusts." 90 C.J.S. *Trusts* § 1 (December 2024 update). Respondents also cite to C.J.S. to support their argument that the usual and customary meaning of "trust business" excludes service as a personal representative, conservator, guardian, or agent: "It has been said that the primary and ordinary conception of a trust company is a corporation or institution organized to take and administer trusts, rather than carry on the ordinary functions of banking." 9 C.J.S. *Banks and Banking* § 650 (December 2024 Update). However, we note that this statement merely distinguishes between two different types of businesses—banks versus trust companies—and does not exclude certain services from "a corporation or institution organized to take and administer trusts," as evidenced by the title of section 650, i.e., "Distinction between bank and trust company." *Id.*

Further, in support of its argument that "trust business" ordinarily includes personal representatives, conservators, guardians, and agents, BOFI cites the definitions of the term in several other states' comparable statutes and to a nationwide compact between states for the regulation of state-chartered trust businesses that defines "trust business" as

> the holding out by a person to the public by advertising, solicitation or other means that the person is available to perform any service as a fiduciary in the host state, including but not limited to:
>
> (a)    acting as a fiduciary, or
>
> (b)    to the extent not acting as a fiduciary, any of the following: (i) receiving for safekeeping personal property of every description; (ii) acting as custodian, assignee, bailee, conservator, transfer agent, escrow agent, registrar[,] or receiver; or (iii) acting as financial advisor, investment advisor, agent[,] or attorney-in-fact in any agreed upon capacity.

7

*Nationwide Cooperative Agreement for Supervision and Examination of Multi-state Trust Institutions* § 1.1(29).  South Carolina executed this compact on June 19, 2018.

To the extent that the term "trust business" may be considered ambiguous, a statute "must be read *as a whole* and sections [that] are part of the same general statutory law must be construed together and each one given effect." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (emphasis added) (quoting *S.C. State Ports Auth. v. Jasper County*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)).  "We therefore should not concentrate on isolated phrases within the statute." *Id.*  "Instead, we read the statute as a whole and in a manner consonant and in harmony with its purpose." *Id.*  "In that vein, we must read the statute so 'that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous,' for '[t]he General Assembly obviously intended [the statute] to have some efficacy, or the legislature would not have enacted it into law.'" *Id.* (alterations in original) (citation omitted) (quoting *State v. Sweat*, 379 S.C. 367, 377, 382, 665 S.E.2d 645, 651, 654 (Ct. App. 2008)).

Further, "[a] statute must receive a practical and reasonable interpretation consistent with the 'design' of the legislature." *Smith v. S.C. Ins. Co.*, 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct. App. 2002).  "The terms must be construed *in context* and their meaning determined by looking at the other terms used in the statute." *Hinton v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 357 S.C. 327, 332, 592 S.E.2d 335, 338 (Ct. App. 2004) (emphasis added).

BOFI correctly points out that the inclusion of "executor, administrator, guardian, committee or in any other fiduciary capacity" in the exceptions to the requirement for trust business licensure in section 34-21-10 shows that these activities would otherwise constitute a trust business if not undertaken by an exempt person, and to view this otherwise would render this final clause of section 34-21-10 "surplusage or superfluous."  *See CFRE,* 395 S.C. at 74, 716 S.E.2d at 881 ("[W]e must read the statute so 'that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous,' for '[t]he General Assembly obviously intended [the statute] to have some efficacy, or the legislature would not have enacted it into law.'" (alterations in original) (citation omitted) (quoting *Sweat*, 379 S.C. at 377, 382, 665 S.E.2d at 651, 654)); *Singletary*, 316 S.C. at 162, 447 S.E.2d at 236 ("The intention of the legislature must be gleaned from *the entire section and not simply clauses taken out of context*." (emphasis added)).

As to the context in which section 34-21-10 appears, there are numerous sections within the same general statutory law that show the legislature's intent to include personal representatives, conservators, guardians, and agents within the term "trust business." *See CFRE*, 395 S.C. at 74, 716 S.E.2d at 881 (holding that a statute "must be read as a whole and sections [that] are part of the same general statutory law must be construed together and each one given effect" (quoting *S.C. State Ports Auth.*, 368 S.C. at 398, 629 S.E.2d at 629)); *Hinton*, 357 S.C. at 332, 592 S.E.2d at 338 ("The terms must be construed *in context* and their meaning determined by looking at the other terms used in the statute." (emphasis added)).

First, in determining the legislature's intended meaning of "trust business" for purposes of Chapter 21 of Title 34, the following definitions in Article 3, which covers common trust funds,[6] are instructive:

> The following terms used in this article shall have the meanings ascribed to them in this section unless the context indicates otherwise:
>
> (1) "Trust institution" means any state bank, any national bank, any building and loan association, savings association, savings and loan association, savings bank, or any trust company authorized to conduct *a trust business in this State*, *or any trust company, authorized to act in a fiduciary capacity in this State*, and *under the supervision of* the Comptroller of the Currency of the United States, or the Federal Reserve System, or the State Board of Bank Control of South Carolina;
>
> (2) The term "fiduciary" means a trust institution undertaking to act alone or jointly with others primarily for the benefit of another in all matters connected with its undertaking and *includes trustee, executor,*

---

[6] "The term 'common trust fund' means a fund maintained by a trust institution, exclusively for the collective investment and reinvestment of moneys contributed thereto by the institution in its capacity as a fiduciary or cofiduciary and established, maintained and administered pursuant to the requirements of [Article 3.]" S.C. Code Ann. § 34-21-210(3) (2020).

9

*administrator,[7] guardian of estates,[8] committee of estates of persons non compos mentis,[9] and managing agent*[.]

S.C. Code Ann. § 34-21-210(1), (2) (2020) (emphases added).[10]  The emphasized language indicates that the legislature intended for the term "trust business" to include a business providing services as a personal representative, guardian, conservator, or agent.  Further, section 34-21-20 clearly governs organizations like Respondents:  "All state[-]chartered banks, building and loan associations, savings associations, savings and loan associations, savings banks, trust companies, and fiduciary corporations authorized to conduct a trust business in this State are subject to examination by [BOFI] and are further subject to rules and regulations promulgated by [BOFI]."

Respondents argue that the language in this provision stating "trust companies, and fiduciary corporations authorized to conduct a trust business in this State" "recognize[s] that there are 'fiduciary corporations' who are not engaged in 'trust business.'"  However, given that BOFI is charged with regulating an industry affecting large sums of client funds, it is unlikely that the legislature intended to draw a distinction between the *types* of fiduciary services to be regulated, e.g., trustee services versus conservator services.  This is obvious in the next section of Chapter 21, S.C. Code Ann. § 34-21-30 (2020):

> Banks, trust companies, or corporations *acting in a fiduciary capacity* shall segregate all assets held in *any* fiduciary capacity from the general assets of the bank, trust company, or corporation and shall keep a separate set of books or records showing in proper detail all transactions relative to this fiduciary business, and these books and records must be under the management of an officer whose duty must be prescribed by the board of directors.

---

[7] Section 62-1-201(33) (2022) provides that the term "personal representative" includes an executor or an administrator.

[8] *See* § 62-1-201(18) (2022) ("'Guardian' means a person appointed by the court as guardian, but excludes one who is a guardian ad litem.").

[9] *See* § 62-1-201(6) (2022) ("'Conservator' means a person who is appointed by a court to manage the estate of a protected person.").

[10] *See also* S.C. Code Ann. § 34-21-220(1) (2020) (allowing collective investment of funds and referencing trust institutions "in their capacities as executor, administrator, committee, guardian, or trustee under a will or deed").

(emphases added). *See CFRE*, 395 S.C. at 74, 716 S.E.2d at 881 (holding that a statute "must be read as a whole and sections [that] are part of the same general statutory law must be construed together and each one given effect" (quoting *S.C. State Ports Auth.*, 368 S.C. at 398, 629 S.E.2d at 629)); *Hinton*, 357 S.C. at 332, 592 S.E.2d at 338 ("The terms must be construed *in context* and their meaning determined by looking at the other terms used in the statute." (emphasis added)). The requirement in section 34-21-30 for fiduciary assets to be segregated from the other funds of the business is consistent with a broad definition of "trust business" that includes fiduciaries other than strictly trustees.

It logically follows that if any institutional fiduciary, whether serving as a trustee, personal representative, guardian, conservator, or agent, maintains possession of beneficiary funds, that particular fiduciary is subject to regulation by BOFI. In other words, common sense dictates that if a business entity is in possession of someone else's money, BOFI should have regulatory authority over that entity. *See Ex parte Michie*, 167 S.C. 1, 27, 165 S.E. 359, 367 (1932) (describing preceding versions of Title 34 and stating "[w]hen the act [of 1911] was passed, banks were almost sacrosanct in the eyes of the people of the state. The lawmakers, when they granted them power to become *executors, administrators, guardians, and trustees*, must have realized that they were creating for them a different status in the law than that of an individual executor, but had faith in their fidelity and the security of the funds [e]ntrusted to them. *The epidemic of bank failures which followed in the years preceding 1930 showed them the fallacy of their faith and induced the passage of the act of 1930, which accurately defines the duties of such fiduciaries in the handling of trust funds*." (dictum) (emphases added)).

Based on the foregoing, the term "trust business" necessarily encompasses fiduciary services provided by not only the trustee of a trust but also a personal representative, conservator, guardian, or agent. Therefore, we reverse the master's conclusion to the contrary.

## II. Regulation of Fiduciaries

Next, BOFI assigns error to the master's conclusion that South Carolina's probate courts regulate personal representatives, conservators, guardians, and agents and, therefore, BOFI "does not control [or] regulate these functions." We agree with BOFI that the jurisdiction of the probate court and the regulatory authority of BOFI can coexist, "allowing the probate courts to adjudicate protective proceedings and

matters of estate administration while BOFI oversees and regulates the business activities of entities serving in fiduciary capacities."

In his order, the master stated,

> The South Carolina Probate Code specifically sets forth the requirements and regulations for, and the probate court's appointment of, non-trustee fiduciary roles including conservator, guardian, attorney-in-fact in accordance with a power of attorney, personal representative or executor. *See*[,] *e.g.*[,] S.C. Code §§ 62-5-308; 62-5-408; 62-5-405; 62-8-102(1); 62-3-203. Because these roles are codified in the Probate Code and are regulated by the probate courts, [BOFI] does not control and regulate these functions. These areas are outside BOFI's jurisdiction.

We disagree with the master's reasoning that matters regulated by the Probate Code cannot also fall within BOFI's authority. The master implicitly recognized that the two can coexist when he accepted BOFI's argument that it has regulatory authority over institutions serving as trustees despite sections 62-1-102 and 62-3-913 of the South Carolina Code (2022) giving the probate court authority over testamentary trusts. Section 62-1-102 states, "(a) This Code shall be liberally construed and applied to promote its underlying purposes and policies. (b) The underlying purposes and policies of this Code are . . . to facilitate use and enforcement of certain trusts." Further, section 62-3-913 states,

> (a) Before distributing to a trustee, the personal representative may require that the trust be registered *if the state in which it is to be administered provides for registration* and that the trustee inform the beneficiaries as provided in Section 62-7-813.

> (b) If the trust instrument does not excuse the trustee from giving bond, the personal representative may petition the appropriate court *to require that the trustee post bond* if he apprehends that distribution might jeopardize the interests of persons who are not able to protect themselves, and he may withhold distribution until the court has acted.

12

(emphases added). These provisions are in fact complemented by the requirement in section 34-21-10 to obtain BOFI approval before a non-exempt entity may serve as a fiduciary and the requirement in section 34-21-20 that such authorized fiduciaries are subject to examination by BOFI and to BOFI's regulations. Further, section 34-15-20 requires a non-exempt bank or trust company to "execute and file approved fiduciary bonds" when fiduciary bonds are required of "individual persons under like circumstances." This provision complements subsection (b) of 62-3-913 (quoted above) in particular.

Further, "[w]here there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect." *Capco of Summerville, Inc. v. J.H. Gayle Const. Co.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006). We agree with BOFI that the Banking Code addresses the qualification of non-exempt entities serving in fiduciary appointments in a more specific and definite manner than the Probate Code. Citing to section 34-15-10 of the South Carolina Code (2020), BOFI correctly asserts, "the Banking Code directly acknowledges and incorporates the probate court's general power of appointment, while also establishing BOFI's specific oversight of the qualifications for a trust company to serve under such a court appointment." Section 34-15-10 provides for the general authority to act as a fiduciary:

> Subject to the provisions of Section 62-3-203 [(establishing the priority among persons seeking appointment as personal representative of an estate)], a banking corporation or trust company *with at least two hundred fifty thousand dollars total unimpaired capital* may be appointed executor of a will, codicil, or writing testamentary, administrator with the will annexed, administrator of the estate of any person, receiver, assignee, guardian or trustee under a will or instrument creating a trust for the care and management of property, *under the same circumstances, in the same manner, and subject to the same control by the court having jurisdiction of the appointment as a legally qualified person.*

(emphases added). We agree with BOFI that this provision acknowledges the probate court's power to appoint a person as a personal representative, guardian, or conservator but also establishes the requirement for a banking corporation or trust

13

company to be legally qualified to accept an appointment, and in this respect, serves as a "qualifier of" the Probate Code's provisions regarding fiduciary appointments by dealing with the "identical issue in a more specific and definite manner." *Capco*, 368 S.C. at 142, 628 S.E.2d at 41.

Moreover, the probate court does not have the authority to examine or investigate any person or entity whereas BOFI does have this authority. *See* § 34-21-10 ("Before any such application shall be approved, [BOFI] shall *make an investigation* to determine whether or not the applicant has complied with all the provisions of law, whether[,] in the judgment of [BOFI,] the applicant is qualified to conduct such a business[,] and whether the conduct of such a business would serve the public interest . . . ." (emphasis added)); § 34-21-20 ("All state[-]chartered banks, building and loan associations, savings associations, savings and loan associations, savings banks, trust companies, and fiduciary corporations authorized to conduct a trust business in this State are *subject to examination* by [BOFI] and are further subject to rules and regulations promulgated by [BOFI]." (emphasis added)); S.C. Code Ann. § 62-5-414(B) (2022) ("Nothing herein shall require the court to oversee or approve the conservator's investment choices."). Unlike the probate court, BOFI's regulatory authority is not based on individual proceedings and its jurisdiction is not limited by county or controversy.

Additionally, "[s]tatutes dealing with the same subject matter must be reconciled, if possible, so as to render both operative." *Hodges v. Rainey*, 341 S.C. 79, 88, 533 S.E.2d 578, 583 (2000). In *Hodges*, our supreme court rejected the defendant's argument that the Restructuring Act impliedly repealed Santee Cooper's enabling legislation. *Id.* at 88–89, 533 S.E.2d at 583. Among other reasons, the court stated that both statutes provided "alternative and complementary means of removal [of Santee Cooper board members]" and that Santee Cooper's enabling legislation, which allowed the removal of a board member "for cause," acted as an important safety net. *Id.* at 89, 533 S.E.2d at 583. The court explained that the Restructuring Act did not affect the advisory board's removal power "for cause" but merely allowed the Governor to remove a director at his or her discretion, allowing the Governor "to remove a director with whom he or she cannot work." *Id.*

The provisions in Title 34 and the Probate Code affecting fiduciaries can be reconciled in a similar fashion. Therefore, we reverse the master's conclusion that the roles of personal representatives, conservators, guardians, and agents are outside BOFI's regulatory jurisdiction.

**CONCLUSION**

14

Accordingly, we reverse the master's conclusions that the term "trust business" excludes the services of personal representatives, conservators, guardians, and agents and that these roles are outside BOFI's regulatory jurisdiction. Further, we remand to the master to enjoin Respondents' services as a personal representative, conservator, guardian, or agent without first complying with section 34-21-10.

**REVERSED AND REMANDED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**